(No. 28987.—

MARY GIBBONS, Appellee, *vs.* JACK CANNAVEN.—(HUGO
E. BRANDT *et al.*, Appellants.)

*Opinion filed March 20, 1946—Rehearing denied May 16, 1946.*

LORD, BISSELL & KADYK, and MARTIN, ULLMAN & BROWN, (L. DUNCAN LLOYD, BRUCE E. BROWN, and RUS-SELL GREENACRE, of counsel,) all of Chicago, for appellants.

JOHN H. GATELEY, of Chicago, for appellee.

Mr. JUSTICE SMITH delivered the opinion of the court:·

This appeal brings up for review a judgment of the Appellate Court for the First District. It involves a construction of sections 14 and 15 of the Liquor Control Act, passed by the General Assembly and approved on January 31, 1934. Ill. Rev. Stat. 1945, chap. 43, pars. 135 and 136.

On May 7, 1941, Mary Gibbons brought the suit against Jack Cannaven alone, as defendant, in the circuit court of Cook county. The suit was based upon the charges in the

complaint that Cannaven, on August 10, 1940, was operating a tavern, or night club, in the city of Chicago; that on that date he sold intoxicating liquor to a person named in the complaint; that such person became intoxicated as the result of drinking the liquor so sold to him and, because of such intoxication, assaulted the plaintiff, inflicting upon her serious and permanent injuries. A trial was had before a jury resulting in a verdict in favor of plaintiff and against Cannaven, the tavern keeper. On December 1, 1942, a judgment was entered on the verdict of the jury against the defendant for the amount of damages fixed by the jury. No appeal was taken by Cannaven from that judgment.

Thereafter a suit was brought by the plaintiff against appellants here, who were the owners of the building in which the tavern was conducted, to subject the property to the payment of the judgment, under section 15 of the Liquor Control Act. Appellants being nonresidents, the cause was removed to the District Court of the United States for the Northern District of Illinois, where it is still pending. Appellants were not parties to the suit brought against Cannaven, in which the judgment here involved was entered.

On November 30, 1943, and within one year from the date the judgment was entered against Cannaven, appellants filed in the Appellate Court for the First District a petition for leave to appeal from the judgment, under paragraph (1) of section 76 of the Civil Practice Act. (Ill. Rev. Stat. 1945, chap. 110, par. 200.) It was alleged in the petition that while appellants were not parties to the suit in which the appeal was sought, they were "parties injured by the judgment of the Circuit Court in the above cause and that they will be benefited by reversal thereof." The petition was supported by the affidavit of their counsel. In this affidavit filed with the petition for leave to appeal, the facts concerning their interest in the judgment were

set out more in detail. It also set up the facts relied upon as excusing them from perfecting an appeal within ninety days after the entry of the judgment.

The Appellate Court, on January 14, 1944, entered an order granting appellants leave to appeal from the Cannaven judgment, in accordance with their petition. Pursuant to this order the notice of appeal was duly filed in the trial court and the appeal was perfected in due course.

Thereafter, appellee, Mary Gibbons, filed in the Appellate Court a motion to dismiss the appeal on the ground that appellants were not interested in the judgment or injured thereby, and had no appealable interest therein. This motion was taken with the case. The cause was submitted on briefs and arguments and on the motion to dismiss. On March 5, 1945, the Appellate Court filed an opinion in which it found that appellants had no appealable interest in the judgment sought to be reversed. The motion to dismiss the appeal was sustained. Judgment was entered according to the findings and the appeal was dismissed. (*Gibbons* v. *Cannaven*, 325 Ill. App. 337.) The case is here on appeal from that judgment, on leave granted by this court.

The decisive questions are whether appellants are interested in the judgment entered against Cannaven and have such an appealable interest therein as entitled them to maintain the appeal to the Appellate Court, and whether the Appellate Court erred in dismissing the appeal for lack of such interest. There is no contention that the judgment against Cannaven was procured by fraud.

It would serve no useful purpose to discuss the many cases cited by appellants as to the appealable interest of persons who are not parties to the record. The rule is well settled and clearly defined. Section 81 of the Civil Practice Act (Ill. Rev. Stat. 1945, chap. 110, par. 205,) provides that "The right heretofore possessed by any person not a party to the record to review a judgment or decree

by writ of error shall be preserved by notice of appeal." Prior to the enactment of the Civil Practice Act, a person not a party to the suit had no right to appeal. (*People ex rel. Yohnka* v. *Kennedy*, 367 Ill. 236; *People ex rel. Galloway* v. *Franklin County Building Ass'n,* 329 Ill. 582.) Under the practice prevailing prior to the adoption of that act, in order to entitle a person to have a judgment to which he was not a party reviewed on writ of error, it was incumbent upon him to show an interest in the judgment or decree sought to be reviewed, or that he would be benefited by its reversal or was competent to release errors. (*Almon* v. *American Car Loading Corp.,* 380 Ill. 524.) In *People ex rel. County of Peoria* v. *Estate of Harrigan,* 294 Ill. 171, it was said that in order to entitle a person to prosecute a writ of error to review a judgment to which he was not a party, the interest of such party must appear in the record, or if it does not so appear, then it must be alleged in the assignment of errors. His interest must be such as to show that he takes or loses something directly by the judgment or decree which he challenges. (*Leland* v. *Leland,* 319 Ill. 426; *White Brass Castings Co.* v. *Union Metal Mfg. Co.* 232 Ill. 165.) The general rule was that before a person who was not a party to the record was entitled to maintain a writ of error, he must show a direct interest in the subject matter of the litigation, which interest was prejudiced or aggrieved by the judgment sought to be reviewed. *American Surety Co.* v. *Jones,* 384 Ill. 222; *People ex rel. Altorfer* v. *City of Peoria,* 378 Ill. 572; *Hotchkiss* v. *City of Calumet City,* 377 Ill. 615.

Under said section 81 of the Civil Practice Act, any person who is not a party to the record has the right to have a judgment in which he is interested, which interest is prejudiced by the judgment, reviewed by appeal in all cases where he had the right of review by writ of error prior to the adoption of the Civil Practice Act. In such cases, where he formerly had the right of review by writ

of error, he now has the right to prosecute an appeal under said section.

The question here is whether appellants, not being parties to the judgment against Cannaven, have such an interest therein, and whether their rights are so prejudiced by that judgment as to authorize them to maintain the appeal to the Appellate Court. The effect of the Cannaven judgment on the rights of appellants is determinative of the question whether they had an appealable interest in that judgment.

As already observed, in order to entitle them to maintain the appeal, it must appear that they have a direct interest in the subject matter of the litigation which is prejudiced by the judgment sought to be reviewed. (*American Surety Co.* v. *Jones,* 384 Ill. 222.) It must be an interest attached to the judgment that was entered on the merits of the controversy. (*Almon* v. *American Car Loading Corp.* 380 Ill. 524.) It is essential that it appear, either from the record or the assignment of errors, that they were injured by the judgment, or will be directly benefited by its reversal, or that they are competent to release errors. *Lenhart* v. *Miller,* 375 Ill. 346; *People ex rel. Yohnka* v. *Kennedy,* 367 Ill. 236; *People ex rel. Pollastrini* v. *Whealan,* 353 Ill. 500.

It will be observed that section 14 of the Liquor Control Act first gives a right of action to any person injured in consequence of the sale of intoxicating liquor against the person or persons selling or giving liquor to another which, in whole or in part, caused the intoxication resulting in the damages complained of. It then provides that, "any person owning, renting, leasing or permitting the occupation of any building or premises, and having knowledge that alcoholic liquors are to be sold therein, or who having leased the same for other purposes, shall knowingly permit therein the sale of any alcoholic liquors that have caused, in whole or in part, the intoxication of any person, shall be liable, severally or jointly, with the person

or persons selling or giving alcoholic liquors aforesaid, for all damages sustained, and for exemplary damages." Section 15 provides, "and in case any person shall rent or lease to another any building or premises to be used or occupied, in whole or in part, for the sale of alcoholic liquors, or shall knowingly permit the same to be used or occupied, such building or premises so used or occupied shall be held liable for and may be sold to pay any such judgment against any person occupying such building or premises. Proceedings may be had to subject the same to the payment of any such judgment recovered, which remains unpaid, or any part thereof, either before or after execution shall issue against the property of the person against whom such judgment shall have been recovered."

The applicable provisions of sections 14 and 15 of the Liquor Control Act are identical with the provisions contained in sections 9 and 10 of the Dram Shop Act of 1874. Ill. Rev. Stat. 1874, chap. 43, pars. 9 and 10.

It is contended by appellants that the Appellate Court construed the above-quoted provisions of sections 14 and 15 of the Liquor Control Act as giving a lien upon their property without affording them an opportunity to be heard as to the liability of the keeper of the tavern, or as to the amount of damages awarded against him. They insist that such construction renders the act invalid and, as so construed, that it contravenes the due-process clauses of both the Federal and State constitutions; that such construction permits a lien upon their property for the payment of a judgment rendered against the tavern keeper without giving to them any notice or right to appear and defend against the entry of such judgment, or as to the amount thereof. It is argued that the owner of premises is entitled to notice and the right to either appear and defend in the suit against the tavern keeper, or the right to defend against such judgment on the merits and as to the amount of damages, in a suit thereafter brought to enforce the

lien of the judgment against the property in which the liquor was sold; that any construction of the act denying to the property owner the right to defend against the judgment on the merits, either in the suit against the tavern keeper or in a suit to enforce the judgment rendered against the tavern keeper against the property, constitutes a denial of due process of law in violation of both the State and Federal constitutions. The force of this argument depends upon the nature of the right of the injured person to enforce his judgment against the tavern keeper by subjecting the property in which the liquor was sold to the lien of the judgment. Does the act improperly confer upon an injured person the right to sue the tavern keeper alone without giving to the owner the right to defend in the suit against the tavern keeper, and does it improperly deny to the owner the right to contest the validity of the judgment entered in that suit on the merits and the amount thereof, in a suit brought under section 15 to enforce the judgment against the property?

The argument advanced by appellants challenging the validity of the applicable provisions of the act as construed by the Appellate Court overlooks the fact that traffic in intoxicating liquors is only a legitimate business within the conditions prescribed by the legislature in permitting their sale. In the exercise of the police power, the legislature may enact laws for the purpose of protecting the health, morals and safety of the people, either by prohibiting traffic in intoxicating liquors or licensing it, or permitting it under any conditions which, in their judgment, they may approve. *Garrity* v. *Eiger,* 272 Ill. 127; *Wall* v. *Allen,* 244 Ill. 456; *Schwuchow* v. *City of Chicago,* 68 Ill. 444; *Kettering* v. *City of Jacksonville,* 50 Ill. 39; *Eiger* v. *Garrity,* 246 U. S. 97, 62 L. ed. 596.

The identical language now contained in sections 14 and 15 of the Liquor Control Act, which was contained in sections 9 and 10 of the Dram Shop Act of 1874, was

construed by this court in *Wall* v. *Allen*, 244 Ill. 456. It was there observed that in the exercise of the police power the legislature, by section 10 of the act, provided that the premises leased for the sale of intoxicating liquors, or which the owner knowingly permits to be used for that purpose, may be subjected to the payment of any judgment recovered for any injury sustained in consequence of the occupant selling or giving away intoxicating liquors. It was there said: "This was the law when the defendant leased his premises, and he must be held to have consented that the premises should be surety for any such judgment. He had his election to lease his premises for the sale of intoxicating liquors or to devote them to some other use, and to either permit them to be used for that purpose or to prevent such use, and we do not see how it can be said that he is deprived of his property without due process of law when he is permitted to controvert the facts upon which the lien rests. An owner is not co-surety with the signer of the dram-shop keeper's bond, (*Wanack* v. *Michels*, 215 Ill. 87,) but it does not follow that he assumes no liability or that his premises may not be subjected to payment of a judgment against his lessee. He is primarily liable to any party injured if such party chooses to avail himself of that remedy, but he must be held to have known that the law would also subject his premises to a lien for any judgment against the dram-shop keeper, and he may properly be held to have voluntarily subjected them to the liability. The building and premises of the defendant were an integral and essential part of the dram-shop, necessary to carrying on the business, and there appears to be no reason for saying that the legislature could not subject them to a lien for injuries resulting from the business."

In *Garrity* v. *Eiger*, 272 Ill. 127, the validity of section 10 of the Dram Shop Act of 1874 was again before this court. That case was a suit in equity by the plaintiff who had obtained a judgment against a dramshop keeper

to subject the premises in which the dramshop was conducted to the payment of the judgment. It was there contended that, under a correct construction of section 10, no action could be maintained to enforce the lien against the property unless the complainant alleged and proved the cause of action against the keeper of the dramshop and the amount of the damages sustained. The effect of the construction there contended for would require the court, when asked to enforce the lien of the judgment against the property, to enter upon an independent investigation of the merits of the judgment and the amount of damages awarded. This would simply constitute a relitigation of the issues in the suit against the dramshop keeper, notwithstanding the judgment had become final. It was argued that sections 9 and 10 should be construed together and, when so construed, the intent of the legislature that the owner of the premises sought to be subjected to payment of a judgment against the dramshop keeper, under section 10, had the same right to contest the cause of action and the amount of damages in the suit to enforce the lien as if he were sued under section 9 of this act. In disposing of this contention adversely to the claim of the property owner in that case, the court pertinently observed: "Reading section 10 with section 9 clearly shows that there was no such intention, since the purposes of the two sections are essentially different. Section 9 makes the owner of the premises personally liable, severally and jointly, with the keeper of the dramshop for all damages sustained by causing, in whole or in part, the intoxication of any person, and he may be sued alone or with the keeper of the dramshop. Any judgment obtained under that section would be a personal judgment against him, to the payment of which all his property, personal and real, wherever situated, would be subject. Section 10, on the other hand, makes the building or premises used or occupied for the sale of intoxicating liquors liable for the payment of any judgment against the person occupying the

building or premises, provided the owner has rented or leased the same to be used or occupied, in whole or in part, for the sale of intoxicating liquors or has knowingly permitted the same to be so used or occupied. Section 10 provides that the premises shall be liable for and may be sold to pay any judgment against the person occupying the premises, and there is no language in either section which would justify an inference that the General Assembly intended anything different. It would be an unwarranted conclusion that the General Assembly, after providing by section 9 for a remedy by suit against the owner in which a personal judgment would be rendered, intended by section 10, in providing for another suit to subject the premises to the payment of a judgment against the dramshop keeper, that the issues once tried and settled should be again tried in a collateral suit to obtain satisfaction of the judgment."

In the above case it was also insisted that the construction of section 10, adopted by the court, rendered that section invalid under the due-process clauses of both the State and Federal constitutions. In disposing of this question adversely to the contentions made, the court said: "The statute was enacted under the police power of the State, which extends to every matter involving the protection of the lives, health and property of the citizens and the preservation of good order and public morals, and it is not only within the power but it is the duty of the General Assembly to enact laws for that purpose. The police power was never granted by the several States to the Federal government nor surrendered by them, and even in matters within the jurisdiction of Congress the several States may still freely exercise the police power. In the *License cases,* 5 How. 504, Mr. Justice Grier, speaking for the Supreme Court of the United States, said: 'It is not necessary, for the sake of justifying the State legislation now under consideration, to array the appalling statistics of misery, pau-

perism and crime which have their origin in the use or abuse of ardent spirits. The police power, which is exclusively in the States, is alone competent to the correction of this great evil, and all measures of restraint or prohibition necessary to effect this purpose are within the scope of that authority.' In the case of *Barbier* v. *Connolly,* 113 U. S. 27, the same court held that neither the fourteenth amendment to the Federal constitution, nor any other amendment, was designed to interfere with the police power of the State to prescribe regulations to promote the health, peace, morals, education and good order of the people; that legislation respecting the liquor traffic does not come within the fourteenth amendment in any case unless it is apparent that its real object is not to protect the community or to promote the general well being but under the guise of police regulation to deprive the owner of his liberty or property without due process of law, and that all property in this country is held under the implied obligation that the owner's use of it shall not be injurious to the community. There is no shadow of ground for saying that section 10 comes within the exception mentioned in that case, and therefore questions concerning the fourteenth amendment may be dismissed from the case. This court considered the relation of the liquor traffic to the police power in *Goddard* v. *Town of Jacksonville,* 15 Ill. 588, and there has never been any question in any court but that any conditions which legislative authority may hedge about the traffic are legal and valid. Anyone entering into the business or leasing his property for it must necessarily accept and agree to be bound by the provisions of the law designed to mitigate the evils of the traffic or to compensate for the damages done by it. Intoxicating liquor cannot be sold without a place in which the business is conducted, and the owner who furnishes premises necessary to the carrying on of the business is an actual participant in it. If he provides a building or premises for another

to conduct a business the usual and ordinary result of which is damage to individuals, he cannot complain that his property is held to compensate the injured party. Having voluntarily devoted his property to a use causing damage and brought it within the conditions prescribed by the statute, he makes it a surety for the payment of any judgment recovered against the occupant of the premises."

The decision of this court in *Garrity* v. *Eiger* was affirmed by the Supreme Court of the United States. (246 U. S. 97, 62 L. ed. 596.) That court, in disposing of the constitutional objections urged against section 10, observed that the right of a State to pass laws for the regulation of traffic in intoxicating liquors and to legislate with a view to repressing the evil consequences which may result therefrom had been frequently affirmed. It was further said that under the broad police power residing in the State of Illinois over the liquor traffic, and the right to pass legislation to prevent its evils, the State had made the premises of an owner subject to a lien for damages resulting from the sale of intoxicating liquors. Continuing, the court said: "The owner of such building has no absolute right to rent his property for any and all purposes. The use of property may be regulated under the police power of the state in the public interest in such manner as to safeguard the health and welfare of the community. Certainly there is no right beyond the reach of legislative control, to rent premises for the sale of intoxicating liquor. The state may, consistently with due process of law, prohibit the rental of premises for such purposes. In this instance it has undertaken to regulate the right to rent property for the sale of intoxicating liquors by making the premises so used subject to a lien for a judgment for damages because of the deprivation of the means of support of the wife resulting from the intoxication of the husband upon whom she depends for support. Obviously, the state may pass

laws to meet this as well as other evil consequences likely to follow from the traffic."

Section 15 of the Liquor Control Act definitely fixes the conditions upon which the property in which a tavern is conducted may be subjected to the payment of judgments recovered against the tavern keeper. The conditions are that a judgment shall have been recovered against the occupant of the building in consequence of the sale of intoxicating liquors, under the provisions of section 14; that the owner rented or leased the building or premises to be used or occupied in whole or in part for the sale of intoxicating liquors, or knowingly permitted the same to be so used, or occupied. Section 15 does not provide that the premises shall be subjected to the payment of the judgment or decree entered, or for damages awarded, in the suit to enforce the lien. It declares that the property may be subjected to the payment of such part of any judgment theretofore rendered against the tavern keeper as may remain unpaid. It presupposes a prior judgment against the tavern keeper which shall constitute the basis for the suit to enforce the lien.

Section 14 gives to one injured in consequence of the sale of intoxicating liquor three distinct remedies. First, he may sue the tavern keeper alone and obtain a personal judgment against him. Second, he may sue the tavern keeper and the owner of the building jointly and obtain a personal judgment against them, or third, he may sue the owner of the building separately and obtain a personal judgment against him. In either case the judgment would be a lien upon all the property of the defendant or defendants sued. Section 15 gives to the person so injured the additional right to enforce a judgment obtained by him against the keeper of the tavern against the property used for the sale of intoxicating liquors, provided the owner has leased it, or knowingly allowed it to be used for that purpose. As

observed in *Wall* v. *Allen,* "To say that the legislature in-intended that an injured party should be required to make the same proof for the purpose of establishing a lien against the dram-shop property that he would be required to make in order to recover a personal judgment against the owner, which would be a lien on all his property, would be unjustified."

The conditions specified in the statute authorizing the enforcement of the lien of the judgment recovered against the tavern keeper, against the property in which the tavern is conducted, which the owner has rented or leased to be used or occupied in whole or in part, for the sale of intoxicating liquor, or which the owner has knowingly permitted to be so used or occupied, are that a judgment has been recovered against the tavern keeper for damages resulting from the sale of intoxicating liquor on the premises; that such judgment, in whole or in part, remains unpaid. The existence of these facts are the only conditions which, by the plain provisions of the statute, are made a prerequisite to the enforcement of the judgment against the property. These are the only issues which the owner is permitted to litigate in a suit to enforce the lien against his property which he has leased to be used in conducting a tavern, or has knowingly permitted to be so used.

In *Garrity* v. *Eiger,* referring to the case of *Wall* v. *Allen,* this court said: "This court pointed out in that case that such an interpretation of section 10 as would require the aggrieved party to prove the original cause of action and the amount of damages, and that the only effect of section 10 is to limit the amount of the lien, would be to say that the premises are not liable for or subject to the payment of the judgment against the dram-shop keeper but will be liable to some other judgment to be recovered in a second action. If that were true, the judgment against the dram-shop keeper finally and conclusively settling the existence of the cause of action and the amount of damages

would go for nothing, and a second jury might either decide that there was no cause of action against the dramshop keeper, or if there was, that the damages that were suffered were only a fraction of the amount recovered, so that the premises would not be subjected to the lien of the judgment, as the statute declares they shall be."

The decision of this court in *Wall* v. *Allen,* and the decision of this court in *Garrity* v. *Eiger,* which was affirmed by the Supreme Court of the United States, are conclusive that the owner of the building is not entitled to contest and relitigate the question of the liability and the amount of the damages fixed in the suit against the tavern keeper, in a suit to enforce the lien of the judgment against the property. Such judgment is conclusive against the owner and he has no right to contest it. If he has no right to contest the merits or the amount of the judgment against the tavern keeper in a subsequent suit brought to enforce the judgment against the property, for the same reasons he has no right to question the merits or the amount of such judgment by an appeal from that judgment. In each of the above cases it is expressly held that such construction does not violate the due-process clauses or any other provisions of the State or Federal constitutions. It is this construction of the language of sections 14 and 15 of the Liquor Control Act which distinguishes this case from the cases cited and relied on by appellants.

Under the above decisions appellants have no interest in the judgment against Cannaven. Their rights are not affected by the suit in which the judgment was entered. While it is true that the judgment may be made the basis for a suit to subject the property in which the liquor was sold to the payment of the judgment, the rights and interests of appellants will only be affected by the suit to enforce the judgment against the property. Neither in that suit nor in any other proceedings have they the right to challenge the merits of the judgment or the amount of

the damages fixed by the judgment. They only have the right to litigate the question of whether a judgment against Cannaven has, in fact, been entered, and whether all or part of that judgment remains unpaid. Their rights are so circumscribed by the statute, as construed by this court. As said by the Supreme Court of the United States in *Eiger* v. *Garrity*, "It was the owner's privilege to rent the property to a lessee of his own choosing, and to safeguard himself by the amount of the rent reserved, or otherwise, for the possible damages resulting from the traffic in intoxicants which the landlord has agreed may be carried on in his premises. The property is not summarily taken, the owner may be heard to deny the rendition of the judgment against the tenant, the making of the lease authorizing the sale of intoxicating liquor, or, if his knowledge of such use be the issue, he may be heard upon that question."

As the Appellate Court properly and pertinently observed, appellants, as owners of the building, had no right to intervene and defend in the suit brought against the tavern keeper or to otherwise interfere in that suit. Under the plain language of section 15, the liability which may be enforced against the building is not necessarily the full amount of the judgment entered against the tavern keeper. It is only for the unpaid portion of such judgment. This liability and the amount thereof will only be fixed by the decree in the suit brought to enforce the lien. If the facts in that case show a compliance with the conditions specified in section 15, the plaintiff in that suit will be entitled to a decree establishing her lien upon the premises, not necessarily for the amount of the judgment against the tavern keeper, but only for the amount of such judgment which, at that time, remains unpaid. Appellants have not incurred, and cannot incur, any liability under the judgment against the tavern keeper. The only liability which may be enforced against their property will result from the judgment

or decree in the subsequent suit authorized by section 15 to enforce the lien.

For the purpose of further demonstrating that appellants are not interested in the judgment against Cannaven, and have no appealable interest therein, it is only necessary to consider the results which would follow if that judgment were reversed upon their appeal. As already pointed out, Cannaven did not appeal from the judgment. He was the only party defendant. It must be assumed that he was satisfied with the liability established by, and the amount of, the judgment entered against him. He elected not to litigate these questions further. If the judgment against Cannaven were reversed on the appeal of appellants, the result would be nothing but chaos. If the judgment were reversed for errors intervening in the trial, the case would have to be remanded to the trial court for a new trial. In that event, who would be the parties to the suit and entitled to litigate? Cannaven is the only defendant named in the suit. He is satisfied with the judgment and does not desire to incur the expense of further litigation. He would necessarily have control of the defense in the suit. The appellants would certainly have no right to enter the suit as parties defendant and make the defense. This is so because the plaintiff, as already pointed out, had the right to either sue Cannaven alone, or to sue him jointly with the owners of the property under section 14. Plaintiff elected, according to the right given her by section 14, to sue Cannaven alone. It is not in the power of appellants to set aside that election and compel the plaintiff to litigate the action against Cannaven with them. She had this right of election under the plain provisions of the statute. Having made such election, there is no power in any court to set it aside and substitute new parties defendant in the case and compel her to litigate the issues between her and Cannaven with parties against whom she brought no action. Any other

construction would nullify the right given to an injured party by section 14 to sue the tavern keeper alone. The trial court would be compelled to deny any effort on the part of appellants to intervene in the suit. To permit them to do so would nullify the election of the plaintiff, given her by section 14, to sue the tavern keeper alone. No one would contend that appellants would have the right to have the judgment reversed and the cause sent back to be relitigated by Cannaven alone with the plaintiff in the suit. Neither could anyone successfully contend that they would have the right to have the cause remanded for the purpose of permitting them to litigate an issue solely between the plaintiff and Cannaven as defendant. The result following a reversal of the judgment on the appeal of appellants would be nothing but confusion confounded. It would produce a condition without precedent and for which there would be no solution in the orderly administration of justice or recognized practice in the courts of this State.

The judgment here involved was not against appellants. They incurred no liabilities under that judgment. The liability, if any, against their property, can and will accrue only under the decree in the subsequent suit brought to enforce the lien, if and when that decree is entered. In that suit they will have the right to litigate every question which they are entitled to litigate under the statute. As said by this court in *Wall* v. *Allen,* "a judgment not obtained by fraud or collusion is conclusive against the owner, both as to the sales and to the damages resulting therefrom."

The judgment of the Appellate Court dismissing the appeal for lack of an appealable interest in appellants is right, and that judgment is affirmed.

*Judgment affirmed.*