THE STATE OF FLORIDA, on the relation of JOSEPH J. PAOLI, v. CHARLES F. BALDWIN, WILLIAM B. WATSON, JR., TOM B. SWANN, JAMES D. JOHNSON and EMIL YDE, as and constituting The State Racing Commission, and the said CHARLES F. BALDWIN, as the chairman of the said State Racing Commission, and the said WILLIAM B. WATSON, JR., as the secretary of the said State Racing Commission, and the STATE RACING COMMISSION.

31 So. (2nd) 627            January Term, 1947
May 6, 1947            En Banc
Rehearing granted June 27, 1947.
Rehearing denied July 27, 1947.

C. J. Hardee, Sam Bucklew, Hardee & Bucklew, Dan Chappell and Chappell & Brown, for relator.

Parker, Foster & Wigginton, for respondents.

BARNS, J.:

An alternative writ of mandamus was issued herein to which respondents filed a return and thereupon relator moved for a peremptory writ notwithstanding respondent's return.

Relator appears to have been a trainer of race horses and had been licensed as such by the respondent but by reason of benzedrine having been found in the urine of a horse named James Acker immediately after a race the respondent commission suspended the license of relator as a trainer at all race tracks in this state for a period of twelve months.

Among other things the respondents' Return alleged:

" . . . benzedrine had been administered to said horse as found to exist in a sample of the urine taken immediately after said race, . . . . "

Relator's petition and the alternative writ stated:

" . . . relator was the trainer of a horse ·named James Acker which won the second race at Sunshine Park, a duly licensed race track located in Hillsborough County, Florida, on January 30th, 947. On February 3rd, 1947, the Relator received a telegram from the State Racing Commission notifying him of his suspension as a trainer. . . . The following day, February 4th, 1947, your relator received a letter, . . . notifying him of his suspension, claiming he had violated Rules 109 and 117, in that the horse, James Acker, had been stimulated by the administration of a drug known as benzedrine in the second race on January 30th, 1947. . . . "

Respondent's Return further alleged:

" . . . Relator was notified that a hearing would be held on said charges on February 24th, 1947, at the hour of 10:00 A. M., . . . . "

Among the statutory powers and duties of the Racing Commission it is provided that it shall:

"(4) Make rules and regulations for the control, supervision and direction of applicants, permittees, and licensees, and for the holding, conducting and operating of all race tracks, race meets, or races held in this state, provided such rules and regulations shall be uniform in their application and

effect, and the duty of exercising this control and power is made mandatory upon such commission."

F.S. 1941, Section 550.02 (4) F.S.A.

In carrying out the provisions of said statutes, the said State Racing Commission promulgated and adopted "Rules of Horse Racing" on the 28th day of November, 1942, and among said Rules were the following, to-wit:

"109. No person shall administer, or permit to be administered in any manner whatsoever, internally or externally, to any horse entered or to be entered in a race, any stimulant, depressant, hypnotic or narcotic drug, of any kind or description, prior to a race or work-out."

"117. The trainer shall be the absolute insurer of and responsible for the condition of the horses entered in a race, regardless of the acts of a third party. Should the chemical or other analysis of saliva or urine samples or other tests prove positive, showing the presence of any narcotic, stimulant, chemical or drug of any kind or description, the trainer of the horse may be suspended or ruled off, and in addition, the foreman in charge of the horse, the groom and any other person shown to have had the care or attendance of the horse may be suspended or ruled off in the discretion of the Commission, and for a like second or subsequent finding shall be ruled off."

The foregoing rule of the Racing Commission does not make negligence nor carelessness of the trainer respecting stimulants, depressants, hypnotics or narcotics found in a horse entered in a race as a cause for suspension. The rule makes the trainer the *insurer* against any horse which he enters in a race having been administered any such drug.

The rule provides that for the first offense the trainer may be suspended or ruled off and for the second offense he shall be ruled off.

The substance of evidence before the Commission was to the effect that at the time of the race James Acker was in charge of a groomsman by the name of Valino who had been employed by relator only for four, five or six weeks; that James Acker came in first and the groomsman had placed some bets on that day and went to cash his tickets imme-

diately after the race and after relator's suspension left relator's employment without notice.

The business of horse racing in this state is affected with a public interest, and is subject to governmental regulations and control. In the exercise of its police power the sovereign may make rules and regulations to promote fair dealings in horse racing. It is the exercise of this same power that enables it to regulate the rates and charges of public utilities and other natural monopolies in order to procure reasonable and fair charges for services. When a regulation reasonably tends to promote or to accomplish a lawful purpose it is not capriciously arbitrary. Before being suspended it was established that relator was the trainer of the "doped" horse and that the horse had been doped when the horse for which he was the trainer entered the race. His negligence or carelessness in regard to the horse's condition is only of persuasive influence with the Commission as to manner and extent of exercise of its powers.

There is no question of a "presumption" as to negligence or carelessness. Relator is not so charged and the rule does not fix negligence or carelessness as the standard of conduct for relator as a trainer under his license. The rule makes the trainer the insurer against certain conditions of the horse upon entering a race. He has been found in default and the penalty imposed is within the rule.

One cannot accept the benefits of a privilege subject to the privilege being suspended in event of certain contingencies and then complain of suspension upon the happening of the specified contingencies after a full and fair hearing. The only civil right involved was a full and fair hearing on the charge under the Rules and a determination of the charge consistent with the proof which relator appears to have received. He only complains of the decision made pursuant to the hearing which complaint is without merit.

Relator complains that the regulation is so capriciously arbitrary as to be of no legal force and effect. When the regulation is considered in reference to the subject matter—horse races and wagering—it is our conclusion that this complaint is without merit.

Relator's motion for a peremptory writ is denied and respondent is discharged.

THOMAS, C. J., BUFORD, and CHAPMAN, JJ., concur.

TERRELL and ADAMS, JJ., dissent.

ADAMS, J., dissenting.

I dissent because to uphold the rule to make the trainer the absolute insurer of the horse under penalty of loss of valuable property rights is void. The word absolute precludes evidence to establish the contrary. The construction in any other way by the board is only grace.

BUFORD, J.:

The pertinent facts relative to this case are sufficiently stated in our opinion filed May 6th, 1947.

On consideration of petition for rehearing we have reached the conclusion that our opinion and judgment of May 6th, 1947, was erroneous and should be vacated.

The real question in this case is whether or not the Florida Racing Commission Rule No. 117 is valid. The rule is:

"The trainer shall be the absolute insurer of and responsible for the condition of the horses entered in a race, regardless of the acts of a third party. Should the chemical or other analysis of saliva or urine samples or other tests prove positive, showing the presence of any narcotic, stimulant, chemical or drug of any kind or description, the trainer of the horse may be suspended or ruled off, and in addition the foreman in charge of the horse, the groom and any other person shown to have had the care or attendance of the horse may be suspended or ruled off in the discretion of the Commission, and for a like second or subsequent finding shall be ruled off."

The relator was suspended under the application of this rule and if the rule under which this suspension was made is arbitrary and unreasonable and, therefore, void, then the action of the Commission in suspending the relator must fall. Under the provisions of this rule the only defenses available to one charged with its violation are (a) that the chemical or other analysis of saliva or urine samples or other tests did not prove positive showing the presence of any narcotic,

stimulant, chemical or drug of any kind or description; (b) that he was not trainer of the horse involved, or (c) that the horse was not entered in the race. The fact, if such existed, that the trainer exercised usual reasonable care in looking after the condition of the horse or that by reason of circumstances over which he had no control he was necessarily required to be absent from the horse for any period of time, or that he exercised all reasonable care usually exercised by trainers in the care and protection of race horses entrusted to them for training, would constitute no defense to the alleged violation of this rule.

A hearing without the right to interpose reasonable and legitimate defenses cannot constitute due process of law. The possession of the license by relator to pursue the profession of a race horse trainer in Florida was a valuable property right in the relator. The record shows that for many years he had been a professional race horse trainer; that he has acquired expert knowledge of that profession and that he has maintained a good reputation for honesty and·integrity in that profession; that by reason of this he has the confidencec and respect of people engaged legitimately in horse racing. To deprive him of these valuable rights under the provision of rule No. 117, supra, would be to subject him to the loss thereof without due process of law. It is no answer to this for the Racing° Commission to say that he voluntarily submitted himself to the operation of this rule when he applied for and received his permit from the Commission to operate as a trainer of race horses in Florida. There is no question that the action of the State Racing Commission in making rules governing racing is subject to judicial review by mandamus in proper cases to determine whether rules are reasonably appropriate to accomplishment of the purposes of statutes legalizing races. See State ex rel. Mason et al. v. Rose, et al., 122 Fla. 413, 165 So. 347.

Section 12 of the Bill of Rights of the Florida Constitution provides in part:

"No person shall . . . be deprived of life, liberty or property without due process of law."

In Maryland in the Circuit Court of Baltimore City on February 20, 1946, the case of American Trainers Assn., Inc., et al. v. George P. Mahoney et al., constituting the Maryland Racing Commission, and Robert F. Curran v. George P. Mahoney et al. constituting the Maryland Racing Commission, in an exhaustive opinion of which we have certified copy before us (which is not binding upon us but is persuasive) that court had under consideration the rule of the Maryland Racing Commission No. 146d, which is as follows:

"If the Commission finds from an analysis of the saliva or urine, or blood taken from horse on the day of a race in which the horse ran, or from other competent evidence that any drug has been administered to the horse within forty-eight (48) hours before the race, the trainer shall be subject to the penalties prescribed in sub-section (a) hereof whether or not he administered the drug, or knowingly or carelessly permitted it to be administered. The fact that the analysis shows the presence of a drug shall be conclusive evidence either that there was knowledge of the fact on the part of the trainer or that he was guilty of carelessness in permitting it to be administered," and held the rule invalid.

When rule No. 117, supra, is read in paria materia with Florida Racing Commission Rule No. 109, it is readily seen that Rule 109 reading as follows:

"No person shall administer, or permit to be administered in any manner whatsoever, internally or externally, to any horse, entered or to be entered in a race, any stimulant, depressant, hypnotic or narcotic drug, of any kind or description, prior to a race or work-out," prohibits certain acts, while rule No. 117 attempts to prescribe the proof required to establish the fact that the proscribed acts have been committed by the trainer. In this regard rule No. 117 in effect provides that proof of the fact that a horse entered in a race has been administered a drug shall constitute irrebuttable evidence that the trainer has violated rule No. 109. This is the reason why rule No. 117 violates the due process clause of both our State and Federal Constitutions.

In Manley v. State of Georgia, 279 U. S. 1, 73 L. Ed. 575, 49 Sup. Ct. 215, the Supreme Court of the United States said:

"Legislation declaring that proof of one fact or group of facts shall constitute prima facie evidence of an ultimate fact in issue is valid, if there is rational connection between what is proved and what is to be inferred. A prima facie presumption casts upon the person against whom it is applied the duty of going forward with his evidence and the particular point to which the presumption relates. A statute creating a presumption that is arbitrary or that operates to deny a fair opportunity to repel it violates the due process clause of the Fourteenth Amendment. Legislative fiat may not take the place of fact in the judicial determination of issue involving life, liberty or property."

In McFarland v. American Sugar Refining Co., 241 U.S. 79, 60 L. Ed. 899, 36 Sup. Ct. 498, the court said:

"But it is not within the province of a legislature to declare an individual guilty or presumptively guilty of a crime."

To like effect are the decisions and judgments in the case of Emanuel Pollock v. H. T. Williams as Sheriff of Brevard County, Florida, 322 U.S. 4, 64 Sup. Ct. Rep. 792, 88 L. Ed. 1095; United States of America v. Frank Dolia, 87 L. Ed. 1519, 319 U.S. 463, 473; Heimer v. Donnan 76 L. Ed. 772, 285 U.S. 312-331; Bailey v. Alabama, 210 U.S. 219, 55 L. Ed. 191, 31 Sup. Ct. 145; Schleisinger v. Wisconsin, 70 L. Ed. 557, 46 Sup. Ct. 260, 270 U.S. 230.

Respondents contend that Rule No. 117 merely sets up a standard of prima facie proof required to convict of violation of Rule No. 109 and cites, among other cases, that of Clary v. Chicago M. & St. P. Ry. Co. 141 Wis. 411, 123 N.W. 649 where the court had under consideration a rule of the railroad company which provided:

"Transfer men and yard crews working within yard limits must move at a rate to insure safety and during weather that obscures the view, must move under flag protection."

There the court interpreted the meaning of the word "insure" and said: "This sentence of the rule is not, however, to be taken literally so as to pass the absolute duty of making all accidents impossible upon the defendant or its employees but may be taken to mean, at least so far as the instant case is concerned, that the rate of speed and consequent degree

of control shall be such as to prevent an injury having for its proximate cause that which is under the circumstances and evidence an excessive rate of speed and the consequent lack of control."

See also the case of Leonard v. Brooklyn Heights Ry. Co. 67 N. Y. Sup. 985, where the court charged the jury that "the inspection of the cars and appliances must be sufficient to insure the safety of passengers against accident" and the court interpreted the meaning of the words "to insure" as used here was not capable of the construction that the words were meant in the limited sense that the company was an insurer. The words in Rule No. 117, viz:

"The Trainer shall be the absolute insuror and responsible for the condition of the horses entered in a race regardless of the act of third parties" can not, by any stretch of the imagination, be construed to mean merely that the trainer shall use such reasonable care as will insure or protect the horse against being stimulated or drugged. Therefore, we do not think the cases cited by Respondent are applicable here.

In the case of Mahoney et al. v. Byers, 48 Atl. (2) 600, the Court of Appeals of Maryland affirmed the judgment of the lower court in which that court had by mandamus required the Maryland Racing Commission to reinstate J. D. Byers as a licensed trainer after his license had been suspended by the Maryland Racing Commission under Rule No. 146, supra, Inter alia, the court said:

"The Commission is a creature of the Legislature and the Legislature does not possess the power under the State Constitution to prevent one from making a defense to a charge brought against him by substituting an irrebuttable presumption for facts. Such a law would be arbitrary, illegal, capricious and hence unconstitutional. 'That the trial of facts, where they arise, is one of the greatest securities of the lives, liberties and estate of the People.' Article 20 Md. Declaration of Rights. This rule prevents the trial of facts and calls for the revocation of the license without cause shown.

"Judge Alvey, speaking for this court in Johns v. State, 55 Md. 350, 363, said: 'So far as this case is concerned, it may readily be conceded, that a statute that should make evidence

conclusive, which was not so of its own nature and inherent force, and by that means preclude the party from showing the truth, would be simply void.' That is exactly what the irrebuttable presumption set up in paragraph (d) of Rule 146 of the Commission does—it prevented the appellee from showing the truth and hence any conviction by the Commission under paragraph (d) of this rule is void."

We think our judgment of May 6th, 1947, should be vacated and set aside; that the return of the Respondents should be held insufficient and that peremptory writ should issue as prayed.

So ordered.

TERRELL and ADAMS, JJ., and WILLIAMS, Associate Justice, concur.

THOMAS, C. J., CHAPMAN and BARNS, JJ., dissent.