(No. 41183.—

Jean Brennan, Appellee, *vs.* Illinois Racing Board *et al.,* Appellants.

*Opinion filed March 27, 1969.—Rehearing denied May 27, 1969.*

Schaefer, Underwood and Ward, JJ., dissenting.

WILLIAM G. CLARK, Attorney General, of Springfield, (JOHN J. O'TOOLE, BERNARD GENIS, and A. ZOLA GROVES, of counsel,) for appellants.

COGHLAN AND JOYSE, of Chicago, (JAMES L. COGHLAN, of counsel,) for appellee.

Mr. JUSTICE KLINGBIEL delivered the opinion of the court:

The Illinois Racing Board revoked the race horse trainer's license of the plaintiff, Jean Brennan, for violation of its rules. In an administrative review action the plaintiff charged that the rule under which his license was revoked was arbitrary and unreasonable, and deprived him of due process of law. He also charged that the chairman of the Board was disqualified from acting in this matter, first, under the statute, because he was financially interested in the operation of the race tracks and, second, because he combined the functions of an investigator, prosecutor, and judge in this proceeding which was initiated by a private corporation of which the chairman was himself a salaried officer. The trial court found that the chairman of the Illinois Racing Board was not disqualified to act in this matter, but also found that the rule of the Board, for violation of which the plaintiff's license was revoked, was unconstitutional and void. The court therefore reversed the order of the Board and directed that the plaintiff's license be reinstated. The Board has appealed directly to this court.

The rule in question, which incorporates verbatim section 3.2 of the Horse Racing Act, reads as follows: "The trainer shall be the absolute insurer of and be responsible for the condition of horses entered by him in a race regardless of the acts of a third party. Should chemical or other

analysis of saliva or urine samples, or other tests, show the presence of any drug of any kind or description, the Board may in its discretion suspend or revoke the license of the trainer, the stable foreman in charge of the horse, the groom, and any other person shown to have had the care or attendance of the horse." Ill. Rev. Stat. 1967, ch. 8, par. 37c—3.

The facts are undisputed. The plaintiff was the trainer of the horse, Unbested, which was the winner of the sixth race at Hawthorne Race Course on September 26, 1967. A urinalysis conducted immediately after the race revealed the presence in the horse's urine of Ritalin, a psychic stimulant prohibited by the Board's Rules of Racing. The plaintiff testified that he had fired an employee about 10 days before the race, and on the date preceding the race he saw that employee around the premises and told him to stay away from the barn. The plaintiff also testified that so far as he knew Ritalin had not been administered to his horse in the three or four-day period prior to the race in question. The findings of fact by the hearing officer designated by the Board did not include any finding that the plaintiff was, himself, guilty of any misconduct or that he had been negligent in guarding the horse.

The statutory provision embodied in the Board's rule authorizes the imposing of a penalty on the trainer without any act or omission on his part, for what amounts to the committing of a felony by someone else (see Ill. Rev. Stat. 1967, ch. 8, par. 37h1), and the question before us is whether such a measure can be upheld as a legitimate exercise of police power. We think it cannot.

Under the police power reasonable requirements may be imposed, of course, to protect the public against fraud and deceit, but they may not be arbitrary, and they must bear a real and substantial relation to the public welfare. Whether the means employed have such a relationship and are essentially reasonable is a question which is subject to review

by the courts. (*Carolene Products Co.* v. *McLaughlin,* 365 Ill. 62.) In the case cited the Filled Milk Act of 1935, which prohibited any sale of filled milk, regardless of deception or fraud, was held invalid. This court observed that it denied to the vendor the right to offer proof with respect to adulteration and fraud, and that a statute creating a presumption which operates to deny a fair opportunity to rebut it contravenes due process of law.

In *Shoot* v. *Liquor Control Com.,* 30 Ill.2d 570, a rule of the Liquor Control Commission provided for a revocation or suspension of the liquor license of anyone who purchases a Federal occupational wagering stamp. Under the Criminal Code the license of any person is voided who knowingly permits his premises to be used as a gambling place. The license of one who had purchased the Federal stamp was suspended by the Commission, although there was no evidence of any gambling on his premises. It appeared that under Federal law the owner of a pinball machine was required to purchase the stamp whether or not the machine was used for gambling. In administrative review proceedings the Commission's order was reversed and its rule was found to be arbitrary and unconstitutional. This court agreed, saying that "Notwithstanding the fact that the State may impose regulations on the liquor traffic more stringent than would be permitted or allowable in other businesses, the imposition of such restraints must nevertheless be in keeping with constitutional restrictions." The court went on to say that licensees have a right to fair treatment in the revocation of their licenses, and that the Commission's rule "is subject to the vice that it unfairly penalizes licensees on the basis of improper, arbitrary and unreasonable presumptions." 30 Ill.2d at 575.

In *Mahoney* v. *Byers* (1946), 187 Md. 81, 48 A. 2d 600, the stimulative drug benzedrine was found in a sample of saliva taken from the winning horse in a steeplechase race. On the basis of this fact alone the Maryland Racing

Commission suspended the license of its trainer, pursuant to a rule purporting to authorize such a penalty "whether or not he administered the drug, or knowingly or carelessly permitted it to be administered." The rule further declared "The fact that the analysis shows the presence of a drug shall be conclusive evidence either that there was knowledge of the fact on the part of the trainer or that he was guilty of carelessness in permitting it to be administered." On review the superior court set aside the order after finding the irrebuttable presumption to be arbitrary and void. This the court of appeals affirmed, saying "The commission is a creature of the Legislature and the Legislature does not possess the power under the State Constitution to prevent one from making a defense to a charge brought against him by substituting an irrebuttable presumption for facts. Such a law would be arbitrary, illegal, capricious, and hence unconstitutional."

In the case at bar there is not even an evidentiary presumption. The licensee is penalized without showing any act or neglect on his part whatsoever. There is no proof that he even knew of the doping of his horse, much less that he actively participated in it. He loses his license solely because of someone else's conduct, of which he had no personal knowledge. It is a fundamental principle of Anglo-Saxon justice that responsibility is personal and that penalties may not be inflicted on one person because of another's acts. As the Maryland court in the *Mahoney* case observed, "This irrebuttable presumption destroyed the right of appellee to offer evidence to establish his innocence. If this is 'just', then the term 'unjust' is without meaning." 187 Md. at 86-7, 48 A. 2d at 603.

In *State ex rel. Paoli* v. *Baldwin* (1947), 159 Fla. 165, 31 So. 2d 627, a trainer's license was suspended under authority of a racing commission rule providing, in terms almost identical to those in the case at bar, that "The trainer shall be the absolute insurer of and responsible for the con-

dition of the horses entered in a race, regardless of the acts of a third party * * *." The evidence disclosed that benzedrine was found in the urine of the winning horse immediately after the race. It was further revealed that the groomsman in charge of the horse had placed bets that day, that he went to cash his tickets immediately after the race and that when the trainer was suspended the groomsman left his employment without notice. The Florida Supreme Court held the commission's rule void, pointing out that possession of a trainer's license is a valuable property right, that under the commission's rule it would be no defense that the trainer may have exercised due care in looking after the condition of the horse or that the incident occurred by reason of circumstances over which he had no control, and that the rule which did not permit such legitimate defenses failed to accord with due process of law. We think a similar conclusion must follow in the case at bar. Before people can be penalized in this fashion they must first be shown to have somehow been at fault.

Even if we could accept the argument that dismisses as merely "unfortunate" the fact that innocent persons are made to suffer, there is still no assurance that the rule in its operation offers any more protection than does one based upon fault, or that it has a real and substantial relation to the protection of race track patrons against fraud or deceit. The thought of these "absolute insurer" provisions is presumably to induce the trainer to take precautions against a tampering with the horse. But this is no more than he would do anyway, under penalty provisions based on traditional principles of fairness, since the consequences of failing to take precautions would be the same. It would seem that the only applications of the rule which would not be equally covered by one based on fault would be to situations which the trainer could not have prevented anyway. We see little if any tendency in penalty-without-fault provisions to reduce the frequency of the crime. Indeed, it is not unlikely

that offenses may be committed which would not otherwise occur. Disgruntled former employees or others wishing to get back at the trainer may well find the rule to be a simple and effective means of causing him to lose his license. He could be penalized regardless of who it was that doped the horse.

No question is presented of the power to prohibit the administering of drugs or stimulants to horses, or to require reasonable measures to be taken for protection against such acts. But making the trainer an absolute insurer, at the peril of losing his license regardless of how innocent he may be, is arbitrary and unreasonable.

The Board claims it would be practically impossible to regulate horse racing "if every rule and regulation was dependent upon knowledge or motives of a person charged with a violation". But even if we assume the statement to be an accurate one, it is no answer to the plaintiff's arguments. Administrative convenience is not a constitutional substitute for the rights of individuals.

Under a rule based on traditional principles of culpability the circumstances prevailing in the horse racing business may be such as to require a showing of close supervision on the part of the trainer before he can be found to have been free of negligence. Indeed, there is virtually nothing a trainer is in a position to do that could not be required in a particular case, as having been necessary in the exercise of due care for the horse.

The circuit court of Cook County was correct in holding the rule void, and its judgment will be affirmed.

*Judgment affirmed.*

Mr. Justice Schaefer, dissenting:

I cannot agree with the majority's limited view of the scope of the power of the State to protect the public from the manipulations to which horse racing is particularly susceptible. That view seems to rest largely upon doubt as

to the wisdom of the legislative enactment and a feeling that there is "little if any tendency in penalty-without-fault provisions to reduce the frequency of the crime." It is hornbook law, however that considerations of this kind are for the legislature, and not for courts.

The statutory provision embodied in Rule 318 states a rule of substantive law which imposes on the horse trainer absolute liability for the condition of his horse, regardless of fault upon his part. The question, therefore, is not whether such a provision raises a conclusive presumption of misconduct or fault but whether the State lacks the power to impose absolute liability. Such legislation is not unusual. For example, in the course of holding the president and general manager of a corporation guilty of having violated the Federal Food, Drug and Cosmetic Act by shipping in interstate commerce misbranded or adulterated drugs, without any showing whatever of wrongdoing on his part, the Supreme Court pointed out that the prosecution "is based on a now familiar type of legislation whereby penalties serve as effective means of regulation. Such legislation dispenses with the conventional requirement for criminal conduct—awareness of some wrongdoing. In the interest of the larger good it puts the burden of acting at hazard upon a person otherwise innocent but standing in responsible relation to a public danger. *United States* v. *Balint,* 258 U.S. 250, 66 L. ed. 604, 41 S. Ct. 301. * * * Hardship there doubtless may be under a statute which thus penalizes the transaction though consciousness of wrongdoing be totally wanting. Balancing relative hardships, Congress has preferred to place it upon those who have at least the opportunity of informing themselves of the existence of conditions imposed for the protection of consumers before sharing in illicit commerce, rather than to throw the hazard on the innocent public who are wholly helpless." *United States* v. *Dotterweich,* 320 U.S. 277, 280-81, 284-85, 88 L. Ed. 48, 51, 53.

The Liquor Control Act imposes a somewhat similar vicarious liability upon licensees under that Act. It provides: "Every act or omission of whatsoever nature constituting a violation of any of the provisions of this Act, by any officer, director, manager or other agent or employee of any licensee, shall be deemed and held to be the act of such employer or licensee, and said employer or licensee shall be punishable in the same manner as if said act or omission had been done or omitted by him personally." (Ill. Rev. Stat. 1967, ch. 43, par. 185.) And a property owner who leases his property for tavern purposes is subject to liability under the Liquor Control Act to one who suffers injury as a result of the sale of liquor to an intoxicated person, even though the owner is entirely without knowledge of the transaction. Ill. Rev. Stat. 1967, chap. 43, par. 135; *Gibbons* v. *Cannaven,* 393 Ill. 376. See also, *Van Oster* v. *Kansas,* 272 U.S. 465, 71 L. Ed. 354.

The present statute goes further, and explicitly makes the trainer an insurer of the condition of his horse, "regardless of the acts of a third party." But, in my opinion it does not for that reason violate the constitutional rights of the plaintiff. Horse racing accompanied by legalized gambling is peculiarly susceptible to fraudulent manipulation. One of the major problems to be guarded against is the artificial stimulation or depression of the horse. The betting public cannot protect itself against this kind of fraud, nor can its adverse effect, so far as the public is concerned, be remedied, for the parimutuel bets must be paid off immediately after each race. These considerations, in my opinion, justified the General Assembly in imposing upon the trainer the duty to take whatever steps are necessary, during the brief but critical period immediately preceding a race, to insure that his horse is in proper condition. That duty is not discharged by a retrospective recital of suspicions aroused before the race by the conduct of a dis-

charged employee. See, *Maryland Racing Com.* v. *McGee* (1957), 212 Md. 69, 128 A. 2d 419.

The majority cites *Mahoney* v. *Byers* (1946), 187 Md. 81, 48 A. 2d 600. The rule involved in that case, however, did not impose upon the trainer an insurer's responsibility. Instead, it provided that "the fact that the analysis shows the presence of a drug shall be conclusive evidence either that there was knowledge of the fact on the part of the trainer or that he was guilty of carelessness in permitting it to be administered." Under that rule the trainer's actual fault was the ultimate fact to be proved, and the court held that the conclusive presumption which required the finding of that ultimate fact from the fact that analysis showed the presence of a drug violated due process. (See, *Tot* v. *United States,* 319 U.S. 463, 87 L. Ed. 1519.) In *State ex rel. Paoli* v. *Baldwin,* 159 Fla. 165, 31 So. 2d 627, a closely divided court applied, on rehearing, the reasoning of the *Mahoney* case to an insurer rule like the one before us. Some years later, the Maryland court distinguished the *Mahoney* case, and sustained the validity of a rule which imposed an absolute liability on the trainer to so guard his horses that no drug could be administered. *Maryland Racing Com.* v. *McGee* (1957), 212 Md. 69, 128 A. 2d 419.

Other courts whose opinions, like the second Maryland case, are not mentioned by the majority, have considered and sustained legislation like that now before us. *Sandstrom* v. *California Horse Racing Board* (1948), 31 Cal.2d 401, 189 P.2d 17, *cert.* den. 335 U.S. 814, 93 L. Ed. 369; *State* v. *West Virginia Racing Com.* (1949), 133 W. Va. 179, 55 S.E.2d 263; *Fogt* v. *Ohio State Racing Com.* (1965), 3 Ohio App. 2d 423, 210 N.E.2d 730.

UNDERWOOD and WARD, JJ., join in this dissent.