John BARCHI, Plaintiff,

v.

Bertram D. SARAFAN, as Chairman and Joseph H. Boyd, Jr., and Eugene J. Keogh, as Members of the New York State Racing & Wagering Board, Division of Harness Racing, Hon. Hugh Carey, Governor of the State of New York, and Hon. Louis J. Lefkowitz, Attorney General of the State of New York, Defendants.

No. 76 Civ. 3070 (GLG).

United States District Court,
S. D. New York.

Aug. 18, 1977.

As Amended Sept. 5, 1977.

Greco & Faraldo, Kew Gardens, for plaintiff; by Joseph Faraldo, Kew Gardens, of counsel.

Louis J. Lefkowitz, Atty. Gen., New York City, for defendants; by Robert S. Hammer, New York City, of counsel.

## OPINION

Before TIMBERS, Circuit Judge, and GRIESA and GOETTEL, District Judges.

GOETTEL, District Judge.

Plaintiff, John Barchi, is a duly licensed harness racing trainer. Defendants are the New York State Racing and Wagering Board (NYSRWB) and the individual members of the Board (the Governor and State Attorney General have also been cited as parties defendant). On July 12, 1976 plaintiff commenced this action pursuant to 42 U.S.C. § 1983 and 28 U.S.C. §§ 1343(3), 2281 et seq., challenging the constitutionality of New York Unconsolidated Law § 8022[1]

---

1. New York Unconsolidated Law § 8022 provides:

If the state harness racing commission shall refuse to grant a license applied for under this act, or shall revoke or suspend such a license granted by it, the applicant or licensee may demand, within ten days after notice of the said act of the commission, a hearing before the commission and the commission shall give prompt notice of a time and place for such hearing at which the commission will hear such applicant or licensee in reference thereto. Pending such hearing and final determination thereon, the action of the commission in refusing to grant or in revoking or suspending a license shall remain in full force and effect. The commission may continue such hearing from time to time for the convenience of any of the parties. Any of the parties affected by such hearing may be represented by counsel, and the commission may be represented by the attorney-general, a deputy attorney-general or its counsel. In the conduct of such hearing the commission shall not be bound by technical rules of evidence, but all evidence offered before the commission shall be reduced to writing, and such evidence together with the exhibits, if any, and the findings of the commission, shall be permanently preserved and shall constitute the record of the commission in such case. In connection with such hearing, each member of the commission shall have the power to administer oaths and examine witnesses, and may issue subpoenas to compel attendance of witnesses, and the production of all material and relevant reports, books, papers, documents, correspondence and other evidence. The commission may, if occasion shall require, by order, refer to one or more of its members or officers, the duty of taking testimony in such matter, and to report thereon to the commission, but no determination shall be made therein except by the commission. Within thirty days after the conclusion of such hearing, the commission shall make a final order in writing, set-

(McKinney 1961) and NYSRWB Rules 4120.5, 4120.6 and 4116.11,[2] 9 NYCRR 4120.-5, 4120.6, 4116.11 as they had been applied by the NYSRWB against him. Upon plaintiff's posting of security the Court, on July 13, 1976, temporarily restrained defendants from further execution of the Board's disputed decision and defendants, in turn, moved for dismissal of the complaint for lack of subject matter jurisdiction. On December 23, 1976, defendants' motion was denied and a three-judge court was convened. (Two companion cases, making similar constitutional challenges, brought after the abolition of three-judge courts on August 13, 1976 have been held in abeyance pending the decision of this Court.)

The facts which gave rise to the case are these: "Be Alert" is a harness race horse, owned by an uninvolved third party, and trained at the time this suit was brought by the plaintiff. On June 22nd, "Be Alert" ran in the third race at Monticello Raceway[3] and placed second. Two days later plaintiff was informed by the presiding steward[4] at Monticello that a post-race urinanalysis revealed the presence of "Lasix"[5] in "Be Alert's" system. Such treatment of a harness race horse is improper within forty-eight hours of a race and violates NYSRWB Rule 4120.4. Barchi declared his innocence in the matter. Thereafter, he was not given access to the analysis, the specimen, and was never confronted with the circumstances under which it was taken.

On June 28th plaintiff voluntarily took a polygraph examination in an effort to establish his non-involvement. The examiner reported that the plaintiff was not lying. A subsequent polygraph examination was administered to plaintiff at the behest of the NYSRWB the next day and the results were similarly exculpatory. Nevertheless, on July 10th, plaintiff received a fifteen-day suspension for violation of the so-called trainer's "insurer" rule from John Fahey, the presiding steward and judge at Monticello. During the period of his suspension

---

ting forth the reasons for the action taken by it and a copy thereof shall be served on such applicant or licensee, as the case may be. The action of the commission in refusing to grant a license or in revoking or suspending a license shall be reviewabie in the supreme court in the manner provided by and subject to the provisions of article seventy-eight of the civil practice act. L.1940, c. 254, § 47; amended L.1954, c. 5, § 6; L.1954, c. 510, § 8; L.1959, c. 881, § 8, eff. July 1, 1959 (pocket part).
By provision of Unconsolidated Law § 8162 the New York State Racing and Wagering Board assumed the powers of the racing commission.

2. The pertinent NYSRWB Rules provide as follows:
*Rule 4116.11 Trainer's responsibility.* A trainer is responsible for the condition, fitness, equipment and soundness of each horse at the time it is declared to race and thereafter when it starts in a race.
*Rule 4120.5 Presumptions.* Whenever the tests or tests prescribed in § 4120.1 hereof disclose the presence in any horse of any drug, stimulant, depressant or sedative, in any amount whatsoever, it shall be presumed:
(a) That the same was administered by a person or persons having control and/or care and/or custody of such horse with the intent thereby to affect the speed or condition of such horse and the result of the race in which it participated; (b) that it was administered within the period prohibited by subdivision (d) of

§ 4120.4 of this Part; and (c) that a sufficient quantity was administered to affect the speed or condition of such animal.
*Rule 4120.6 Trainer's responsibility.* A trainer shall be responsible at all times for the condition of all horses trained by him. No trainer shall start a horse or permit a horse in his custody to be started if he knows, or if by the exercise of reasonable care he might have known or have cause to believe that the horse has received any drug, stimulant, sedative, depressant, medicine, or other substance that could result in a positive test. Every trainer must guard or cause to be guarded each horse trained by him in such manner and for such period of time prior to racing the horse so as to prevent any person not employed by or connected with the owner or trainer from administering any drug, stimulant, sedative, depressant or other substance resulting in a positive test.

3. The harness track is located in Sullivan County, New York and its race "meeting" schedule is of approximately seven months duration each year.

4. *See* N.Y.Uncons.Law § 8009 (McKinney 1961).

5. "Lasix" is acknowledged by the parties to be a drug used to clear a horse's sinuses but which may have a stimulative effect on an animal's race performance.

no horse of which he was the trainer would be allowed entry in races at the track.

Race horse trainers may be entrusted with the care of a number of trotters at any given time. A trainer's income is derived in large measure from the proceeds of horse races (as opposed to a salary), and, since, harness "meetings" are sporadic, trainers cannot recapture the racing opportunities lost by missed meetings. Once a trainer is suspended, even for a brief period, an owner will immediately seek the services of another trainer so that the horse is not barred from racing. This change is often permanent in order to avoid further disruption in the care of the animal. Significantly, plaintiff has proffered the affidavit of a third-party trainer/driver who experienced just such a loss during a suspension for a similar drug infraction. He had also suffered irreparable damage for a subsequent *ex parte* suspension that was later reversed. Racing opportunities lost because of a suspension cannot be recovered by a later reversal in an review hearing for obvious reasons. Furthermore, defendants do not dispute the fact that a loss of horses in a trainer's stable occasioned during his suspension can often be an irremediable injury, even though such suspension is erroneous and without justification.

Defendants note that at Monticello (and presumably at other NYSRWB harness tracks) a prohibition on medication of horses within 48 hours of a race is enforceable since entries are made three days prior to race time. At Monticello, the horses for all the day's races are brought into a state-secured paddock prior to the first race of the day. Pre-race tests are performed there to determine if a horse has been drugged. (Pre-race testing is not done on thoroughbred race horses.) "Be Alert's" pre-race blood test was negative. (A different type of test, after the race, detected the drug.)

Defendants admit that an unsuccessful attempt was made to determine the actual party responsible for the drugging of "Be Alert" and that only after such efforts proved fruitless was plaintiff suspended under the trainer "insurer" rule. This action was deemed necessary by the judges "to protect the integrity and reputation of the sport and to insure public confidence." Defendants note that, historically, both harness tracks and state authorities have found it imperative that racing be conducted fairly both in fact and in appearance and that even the specter of impropriety has been enough to cause disorders at the tracks, with resulting jeopardy to the safety of members of the public and the industry. (There is no indication that the events in dispute here caused any such disorders.)

Plaintiff challenges Section 8022 on due process and equal protection grounds. He contends, with respect to the former, that the statute denies a trainer any opportunity to confront and contest an accusation of dishonesty before a suspension has been both ordered and, in many cases, executed. On equal protection grounds the plaintiff contests the prohibition on stays which exist in the harness racing provisions of the Unconsolidated Laws but which do not exist in the thoroughbred racing provisions. Finally, plaintiff challenges the NYSRWB Rules which establish a presumption of deliberate drugging and make the trainer an "insurer" of his horses' conditions as a matter of law.

Defendants respond by asserting that the procedures established by Section 8022 and the NYSRWB Rules are a valid exercise of the state police power and are a fair response to the potential for corruption in the heavily regulated racing industry. Furthermore, they argue that this Court should not exercise jurisdiction over plaintiff's claims until the New York state courts have been given an opportunity to review the issues presented. While this action is clearly within the jurisdiction of the Court, the defendants argue for abstention from the exercise of such jurisdiction pending an "authoritative" state interpretation of Section 8022, citing *Carey v. Sugar*, 425 U.S. 73, 96 S.Ct. 1208, 47 L.Ed.2d 587 (1976) and *Zwickler v. Koota*, 389 U.S. 241, 88 S.Ct. 391, 19 L.Ed.2d 444 (1967).

A federal court's discretion to abstain, in cases otherwise within the court's jurisdiction, when the controversy involves unset-

tled issues of state law, was first extensively discussed in *Railroad Commission of Texas v. Pullman*, 312 U.S. 496, 61 S.Ct. 643, 85 L.Ed. 971 (1941). In reversing a three-judge court's decision enjoining enforcement of a Texas Railroad Commission order, Justice Frankfurter criticized the wisdom of basing federal constitutional determinations (in *Pullman*, a Thirteenth Amendment decision) on unsettled state law foundations. In such situations, *Pullman* reasoned, the trial court should abstain from deciding the case until the state court decides the state law issues. 312 U.S. at 500, 61 S.Ct. 643.

While the *Pullman* doctrine has been expanding in recent cases, *see, e. g., Trainor v. Hernandez*, 431 U.S. 434, 97 S.Ct. 1911, 52 L.Ed.2d 486 (1977); *Juidice v. Vail*, 430 U.S. 327, 97 S.Ct. 1211, 51 L.Ed.2d 376 (1977); *Younger v. Harris*, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971);[6] the clearest statement of the test to be applied in the instant case is found in *Harman v. Forssenius*, 380 U.S. 528, 85 S.Ct. 1177, 14 L.Ed.2d 50 (1965). In that case the Supreme Court reviewed a three-judge court's decision striking down a Virginia poll tax provision as violative of Art. I, § 2 and the Seventeenth Amendment to the Constitution. In reaching a decision on the merits the court refused Virginia's request for abstention in order to first allow the state courts to pass on the state law. In affirming the lower court refusal to abstain, the Supreme Court stated:

Where resolution of the federal constitutional question is dependent upon, or may be materially altered by, the determination of an uncertain issue of state law, abstention may be proper in order to avoid unnecessary friction in federal-state relations, interference with important state functions, tentative decisions on questions of state law and premature constitutional adjudication. *E. g., Railroad Comm'n v. Pullman Co., supra*. The doctrine, however, contemplates that deference to state court adjudication only be

made where the issue of state law is uncertain. . . . Thus "recognition of the role of state courts as the final expositors of state law implies no disregard for the primacy of the federal judiciary in deciding questions of federal law." *England v. Louisiana State Board of Medical Examiners*, 375 U.S. 411, 415–16 [84 S.Ct. 461, 465, 11 L.Ed.2d 440].

*Harman v. Forssenius*, 380 U.S. at 534–35, 85 S.Ct. at 1182.

Is the question concerning the constitutionality of Section 8022 an open question of state law? We think not. In *Tappis v. New York State Racing and Wagering Board, Harness Racing Division*, 36 N.Y.2d 862, 370 N.Y.S.2d 922, 331 N.E.2d 697 (1975), the Court of Appeals, in a review of sanctions against a harness trainer, explicitly upheld the constitutionality of the provisions challenged in the instant case. The Appellate Division had set aside the confirmation of a fine levied on a trainer in accordance with its holding that the NYSRWB Rules permitting fines without prior hearings were unconstitutional. 46 A.D.2d 613, 359 N.Y.S.2d 780 (1st Dep't 1974). The Court of Appeals reversed, and held that

[t]he compelling and substantial State interest involved in maintaining discipline among trainers and owners . . . so as to preclude the appearance or the fact of impropriety, justifies on-the-spot sanctions and penalties in advance of hearings, and the procedure . . . followed involved no infringement of petitioner's constitutional rights and complied sufficiently with the requirements of the due process clauses of the Federal and State Constitutions.

36 N.Y.2d at 863, 370 N.Y.S.2d at 923, 331 N.E.2d at 698.

■ Thus, as to the threshold due process question, the State of New York has clearly passed upon Section 8022. With regard to equal protection, the statute explicitly

---

6. The instant case does not come within the *Younger* abstention doctrine because there is no state court action presently pending. *See*

*Village of Belle Terre v. Boraas*, 416 U.S. 1, 3 n.1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974).

states that pending an administrative hearing "the action of the commission . . . in revoking or suspending a license shall remain in full force and effect." While there may be some doubt whether, in the absence of such mandatory language, a rule absolute could be inferred, the present state of Section 8022 needs no further clarification. Conversely, Section 7915 clearly contains no such prohibition when dealing with sanctions in thoroughbred racing. Where no uncertainty exists in state law there is no need for federal deference to a state court ruling. *Davis v. Mann*, 377 U.S. 678, 690, 84 S.Ct. 1441, 12 L.Ed.2d 609 (1964).[7]

Section 8022 permits the presiding NYSRWB Steward to revoke or suspend a harness race horse trainer's license by issuing notice of such action. Within ten days after notice the licensee may make a demand for a review hearing before the full Board. The Board must, in turn, "give prompt notice of a time and place for such hearing" but may continue the hearing "from time to time for the convenience of any of the parties." When the hearing is completed the Board has 30 days to issue a final order. Pending final order, the original suspension or revocation remains in full force and effect. Thus, it is clear that, even without continuances of the review hearing, a trainer may wait over a month for a review decision. During this time, as the parties concede, a brief suspension, such as is involved here, will have been completely served. Exoneration by a review board cannot restore lost racing dates and terminated training contracts.

Defendant argues that the trainers accept their licenses with full knowledge and understanding of the NYSRWB rules and procedures and, therefore, cannot be heard to complain about them. In addition, the state points to its compelling interest in insuring honest racing in an industry that provides large sums of money for the state treasury. Furthermore, the need to protect the public from dishonesty and from the potential for violence that attends public perception of racing dishonesty justifies the strict enforcement standards in the harness race industry.

In evaluating a due process claim the Court's focus is not upon whether the plaintiff's interest is a "right" as opposed to a "privilege." *Board of Regents v. Roth*, 408 U.S. 564, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972). Consequently, defendant's argument that a licensee cannot complain of the terms of enforcement in a regulated industry is not persuasive. The appropriate opening question for the Court concerns the *nature* (as opposed to the *weight*) of the interest to be protected. *Goss v. Lopez*, 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975); *Board of Regents v. Roth, supra.* A licensee's interest can be an entitlement subject to due process consideration, especially when the suspension or revocation by the licensing body is based upon a determination of licensee fault or misconduct. *Bell v. Burson*, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); see also *Connell v. Higginbotham*, 403 U.S. 207, 91 S.Ct. 1772, 29 L.Ed.2d 418 (1971). Therefore, it is the Court's finding that the nature of a trainer's license in New York and the state's *ratio decendi* in suspending it entitles the holder to due process protection.

Once an interest is found to warrant due process consideration, it must be decided which protections are particularly applicable. *Morrissey v. Brewer*, 408 U.S. 471, 92 S.Ct. 2593, 33 L.Ed.2d 484 (1972). As Justice Powell has noted in *Arnett v. Kennedy*, 416 U.S. 134, 168, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974) (concurring opinion), the procedures which due process requires under a given set of circumstances depend upon balancing the governmental interest against the private interest affected. Conducting a hearing prior to termination is not a rigid requirement of due process. *Board of Regents v. Roth, supra.* The state may, even in the absence of dire peril or an imminent emergency, demonstrate the pri-

---

**7.** It might also be noted that this opinion will result in little interference with state functions since defendants argue that they already have the power to follow the procedures mandated herein.

macy of its interests over those of the plaintiff and, in such cases, termination may precede a promptly-held post-termination hearing. *Goss v. Lopez, supra; Arnett v. Kennedy, supra.* In *Matthews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) the Supreme Court has fashioned the following factors applicable to a due process determination:

> [I]dentification of the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the government's interest, including the function involved and the fiscal and administrative burdens that the additional substitute procedural requirements would entail.

*Matthews v. Eldridge,* 424 U.S. at 335, 96 S.Ct. at 903.

The private interest at stake is, simply, the right to a livelihood. Plaintiff has convincingly demonstrated that a trainer, once his license is suspended, rightly or wrongly, is potentially subject to a loss of clients and an irretrievable loss of income from any race meeting in progress. The state, undeniably, has compelling interests to be considered. Racing is a strictly-regulated activity in New York. Defendant correctly notes that there is a heavy flow of cash in racing, both in purses and wagers, as well as substantial tax revenues from levies on racing. As has been aptly observed by Judge Weinfeld, in *Gilmour v. N.Y.S. Racing & Wagering Board,* 405 F.Supp. 458, 460–61 (S.D.N.Y.1975):

> [t]he state's interest essentially reflects the public interest that sports be honestly conducted, which extends to the avoidance of even the appearance of impropriety in connection with pari-mutuel betting. The state also has a substantial monetary interest since it receives vast sums from the proceeds of racing meets.
> . . . . .

[S]uspicious race results have resulted in fans rioting at race tracks, causing both personal injury and property damage. Thus, the need to maintain strict vigilance against race fixing and to take immediate steps against dishonest drivers and owners is of prime importance in the long run and perhaps in the short run as well. It is important to the public no less than to those who run the raceways.

■ The state's interest in preventing fraud at the track and in insuring public confidence is substantial and, in appropriate circumstances, justifies summary suspension prior to hearing or formal determination. *Hubel v. West Virginia Racing Commission,* 513 F.2d 240 (4th Cir. 1975). It remains to be considered, however, whether the invariable application of this procedure, from which no stay is available, provides constitutional due process when the reviewing process becomes meaningless.

It can be stated with certainty that the plaintiff's interest in this case is more substantial than those private interests in both *Arnett v. Kennedy, supra* and *Goss v. Lopez, supra,* since the loss herein is both irreparable and substantial.

In balancing the relative weight of these interests against the state's it is well to note that even though the state alleges a need for immediate action, the initial suspension decision in plaintiff's case took sixteen days. In light of the time the state is presently taking in such matters, requiring either a stay, as allowed in thoroughbred racing, or a prompt hearing if same is granted, results in little "interference" in track supervision. A prompt hearing and determination could well have been conducted within the sixteen days the state took in imposing its "immediate" sanctions in this case. Moreover, since Section 8022 already provides for Board review hearings, requiring the expedition of such hearings is a scant additional burden for the state.

Another of the *Eldridge* factors to be considered is the risk of an erroneous deprivation extant in the current procedures. Plaintiff has argued that the combination of the presiding Steward's power to sus-

pend immediately and the Board's power to control the pace of the hearings, make the review by the Board an exercise in futility and renders the initial suspension order, in fact, irreversible. There is an inherent revulsion against a system which, as has occurred in this case, favors quick sanctions, even in the face of a demonstration of innocence, at the expense of an accurate determination of responsibility. In the present case, the plaintiff submitted himself to two polygraph examinations, one at the Board's behest. Both examinations indicated plaintiff's innocence in the drugging of "Be Alert." There would appear to be little more that the plaintiff could have done to demonstrate a lack of culpability. Nevertheless, the presiding Steward ordered a suspension. No great urgency was apparent here. A hearing prior to the administering of sanctions, or a stay pending review, would have given the Commission the opportunity to review the Steward's action.

 The opportunity to be heard in review of a state sanction must be available in a meaningful manner and at a meaningful time. *Armstrong v. Manzo*, 380 U.S. 545, 552, 85 S.Ct. 1187, 14 L.Ed.2d 62 (1965). On balance, the Court concludes that the absence of either a pre-suspension hearing or a *prompt* post-suspension hearing denies plaintiff the meaningful review due process requires. *Bell v. Burson, supra; Armstrong v. Manzo, supra.*

8. N.Y.Uncons.Law § 7915 provides, in pertinent part:

No license shall be revoked unless such revocation is at a meeting of the state racing commission on notice to the licensee, who shall be entitled to a hearing in respect of such revocation. In the conduct of such hearing the commission shall not be bound by technical rules of evidence but all evidence offered before the commission shall be reduced to writing, and such evidence together with the exhibits, if any, and the findings of the commission, shall be permanently preserved and shall constitute the record of the commission in such case. The action of the commission in refusing, suspending or in revoking a license shall be reviewable in the supreme court in the manner provided by and subject to the provisions of article seventy-eight of the civil practice act. Such hear-

Plaintiff's equal protection challenge to Section 8022 is based upon a distinction with New York Unconsolidated Law Section 7915,[8] the procedure for suspension and revocation of persons licensed in the thoroughbred race horse industry, which is substantially identical to Section 8022's procedures, excepting the absence in the former of prohibition of stays of execution of suspensions and revocations pending review. Plaintiff argues that this difference in treatment is an unconstitutional denial of equal protection of law. Defendant's response is unique. After having argued in opposition to the due process challenge, that swift, even Draconian, enforcement is a necessary weapon in the regulation of harness racing, defendant now argues on the equal protection issue that the NYSRWB has "interpreted" Section 8022 and Section 7915 to allow stays of execution in both types of racing and that, as a matter of practical operation, the NYSRWB has attempted to treat all racing personnel in the same manner. Defendant claims that since the Board has decided that it can, as a matter of administrative grace, grant stays in the harness industry, there are no differences in treatment between thoroughbred and harness racing and, therefore, there is no equal protection issue.

██ As is noted in the order of December 23, 1976, Section 8022 creates no "suspect classifications"[9] and involves no "funda-

ing may be held by the chairman thereof or by any commissioner designated by him in writing, and the chairman or said commissioner may issue subpoenas for witnesses and administer oaths to witnesses. The chairman or commissioner holding such hearing shall, at the conclusion thereof, make his findings with respect thereto and said findings, if concurred in by two members of the commission, shall become the findings and determination of the commission.

9. *See, e. g., Brown v. Board of Education,* 347 U.S. 483, 74 S.Ct. 686, 98 L.Ed. 873 (1954) (race); *Examining Board of Engineers, Architects and Surveyors v. Flores De Otero,* 426 U.S. 572, 96 S.Ct. 2264, 49 L.Ed.2d 65 (1976) (alienage); *but see San Antonio School District v. Rodriguez,* 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16 (1973) (rejecting "wealth").

mental interests." [10] Therefore, the test to be applied in evaluating an equal protection claim is "traditional"—whether or not the classification is without a reasonable basis. *Shapiro v. Thompson*, 394 U.S. 618, 638 n.20, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). In other words, is there a rational state interest (in the protection of the integrity of harness racing) reasonably connected to classifying the harness racing sector (in which stays are prohibited) separately from the thoroughbred racing section (in which stays are not)? Defendant argues that the disparate treatment is justifiable because the harness racing meetings are more susceptible to corruption and, therefore, the Section 8022 enforcement system is a necessary bulwark of integrity and public confidence in the harness sector. Defendant has been offered an opportunity to prove the existence of such differences and to prove that they reasonably relate to the differences in treatment effected by Sections 7915 and 8022 but has not come forward with any proof. Where the state attempts to justify such action "as a rational means for the accomplishment of some significant state policy [it] requires more than a bare assertion, based on a conceded complete absence of supporting evidence, that the burden is connected to such a policy." *Carey v. Population Services International*, —— U.S. ——, ——, 97 S.Ct. 2010, 52 L.Ed.2d 675 (1977).

While greater dishonesty (if it exists) may counsel greater diligence in the enforcement of NYSRWB rules in the harness industry, it bears little relation to the stay-prohibitive classification set up by Section 8022. The grant or denial of a stay is an individual determination. Even if a factually unsupported assertion of greater corruption in the harness industry is accepted by the Court, there is no relationship between a stay's availability and such probabilities of corruption.

A legislative classification must contribute substantially to the achievement of the state's purpose. . . . [G]rossly

overinclusive or underinclusive classifications should not readily be tolerated. Nor should a reviewing court defer to imaginable facts that might justify the classification. But account should be taken of legislative realities and the need for legislative flexibility. In short, a legislature should be able to adopt any means that are reasonably effective in achieving a valid legislative end or ends. *Boraas v. Village of Belle Terre*, 476 F.2d 806, 821–22 (2 Cir. 1973) (dissenting opinion), *rev'd*, 416 U.S. 1, 94 S.Ct. 1536, 39 L.Ed.2d 797 (1974).

■ If the state could show that harness racing was more prone to corruption or fraudulent manipulation, then there might be justification for imposing stricter sanctions, but it has hardly supported the separate procedural classification established by Section 8022. The record is devoid of any rational state interest reasonably connected to the differences in treatment accorded harness and thoroughbred personnel. The Court finds, therefore, that the prohibition of stays pending review in harness racing constitutes a denial to plaintiff of equal protection of law and is a further constitutional impediment to the enforcement of the rules.

The final question for the Court is whether NYSRWB Rules 4116.11, 4120.5 and 4120.6 establish a constitutionally improper presumption of guilt. While the parties seem to be in agreement that Rule 4120.5 establishes a presumption of fact as to a drugged horse and that Rules 4120.6 and 4116.11 establish the trainer as an insurer of a horse's condition as a matter of law, these interpretations have never had the benefit of state court interpretation. The earliest case on the constitutional standards applicable to presumptions is *Mobile, J. & K.C.R. Co. v. Turnipseed*, 219 U.S. 35, 31 S.Ct. 136, 55 L.Ed. 78 (1910) which dealt with a Mississippi statutory presumption of railroad negligence upon proof of employee injury suffered in the course of employment. In sustaining the operation of the

---

**10.** *See, e. g., Shapiro v. Thompson*, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (right

to travel); *Dunn v. Blumstein*, 405 U.S. 330, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972) (right to vote).

presumption the Court opined that the equal protection test to be applied to a presumption was whether there was a rational connection between the fact proven and the ultimate fact presumed. The Supreme Court has retained this "rational connection test" in subsequent cases. *Tot v. United States,* 319 U.S. 463, 63 S.Ct. 1241, 87 L.Ed. 1519 (1943); *McFarland v. American Sugar Co.,* 241 U.S. 79, 36 S.Ct. 498, 60 L.Ed. 899 (1916).[11]

■ Plaintiff concedes that the evidentiary presumption is rebuttable. The Court finds that the duty of a trainer to oversee his horses is sufficiently connected to the occurrence of tampering to support the presumption established by the trainer's "insurer" rules. The state's definition of trainer responsibility is reasonably related to the interests involved and, given the rebuttable nature of the 4120.5 presumption, the high standard of accountability is not unconstitutional. Whether the application of the rules in plaintiff's case was constitutionally proper is not a matter we need consider in light of the absence of an opportunity for meaningful administrative review.[12]

Therefore, the Court finds N.Y.Uncons.Law Section 8022 unconstitutional for two distinct reasons. First, it permits the state to irreparably sanction a harness race horse trainer without either a pre-suspension or a prompt post-suspension hearing, in violation of plaintiff's right to due process. Secondly, it prohibits stays of execution of suspension orders pending review in cases of harness racing personnel without a parallel prohibition in thoroughbred racing cases—a separate classification lacking a rational basis reasonably connected to the state's interests—in violation of plaintiff's right to equal protection of the law.

SO ORDERED.

GRIESA, District Judge, concurring.

I concur with the majority opinion, insofar as it declines to rule unconstitutional NYSRWB Rules 4120.5, 4120.6 and 4116.11, 9 NYCRR 4120.5, 4120.6 and 4116.11.

I also concur with the majority holding as to Section 8022, but with a few additional comments.

Section 8022 gives the Board discretion to impose sanctions, such as revocation of license, prior to hearing. The statute provides for a hearing by the Board at the request of an aggrieved party, but states:

"Pending such hearing and final determination thereon, the action of the commission in refusing to grant or in revoking or suspending a license shall remain in full force and effect."

The majority opinion interprets this language as *prohibiting* the Board from granting a stay of a sanction pending a hearing. Thus, as the majority reads the statute, the Board or its representative has the power to impose immediate severe economic sanctions without a hearing, and is prevented from even considering an application for a stay pending a hearing no matter what good cause is shown.

Although it might be possible to construe the statute in some other way, I must agree that the majority's interpretation is based upon the obvious meaning of the language. And, under this interpretation, there are the violations of due process and equal protection which the majority condemns.

However, in my view (and I believe this to be the meaning of the majority opinion also) Section 8022 would not be constitu-

11. While a shift to the more stringent "reasonable doubt" standard may be occurring in criminal cases, *see Turner v. United States,* 396 U.S. 398, 416, 90 S.Ct. 642, 24 L.Ed.2d 610 (1970); *Leary v. United States,* 395 U.S. 6, 36 n.64, 89 S.Ct. 1532, 23 L.Ed.2d 57 (1969); it does not apply to the case at bar.

12. Had a stay been granted and had the Commission upheld the steward's action, exhaustion of state remedies would appear to be prerequisite to application for relief by this Court, particularly in light of the absence of authoritative New York State construction of the "insurer risk."

tionally defective, if the language quoted above about the prohibition on stays were eliminated or were replaced with a provision allowing the Board to have the discretion to grant a stay pending a hearing. This means that the statute would be constitutionally proper if it granted the Board the discretion to impose pre-hearing sanctions, if this were coupled with the discretion to stay such sanctions pending a hearing.