578 P.2d 673

**Jerry SCHVANEVELDT and John Treasure, Plaintiffs-Respondents,**

v.

**IDAHO STATE HORSE RACING COMMISSION, Defendants-Appellants,**

and

**Western Idaho Fair Board, Defendant-Intervenor-Appellant.**

No. 12413.

Supreme Court of Idaho.

April 28, 1978.

Jay L. Webb of Webb, Johnson, Redford & Greener, James E. Risch of Risch, Goss & Insinger, Boise, for defendant-intervenor-appellant.

Wayne V. Meuleman of Park & Meuleman, Boise, for plaintiffs-respondents.

BAKES, Justice.

The appellant Idaho State Horse Racing Commission suspended the licenses of the respondents, two horse trainers, after chemical tests detected drugs in horses they had raced at Les Bois Park in Boise. This dispute concerns the legality of the racing commission's suspension of the licenses pursuant to its "absolute insurer rule" without a showing the the respondents were involved in the illegal medication of the horses. The Western Idaho Fair Board, the operator of Les Bois Park, is an intervenor appellant.

Respondent John Treasure, a licensed assistant trainer, entered a horse named "Please Due" in the first race at Les Bois Park on May 22, 1976. Respondent Jerry Schvaneveldt, a licensed trainer, entered a horse named "Missy Feast" in the second race at Les Bois Park on May 23, 1976. Both horses won their respective races. As required by the racing commission's rules, a urine specimen was taken from each winning horse immediately following the race. Chemical analysis of the specimens taken from Missy Feast and Please Due revealed the presence of hydromorphone, a narcotic.

The commission held a formal hearing concerning possible violations of Rules 4.36 and 15.19 of the Idaho Horse Racing Rules and Regulations, which were promulgated by the commission. Rule 4.36 provides that the trainer is the "absolute insurer" of the condition of the horses he enters.[1] Rule 15.19 provides that the presence of medication in a post race urine sample is *prima facie* evidence that the horse sampled was illegally medicated and authorizes the stewards to penalize those who participated in the administration of the medication.[2] The

1. "[Idaho Horse Racing Rules and Regulations] 4.36 THE TRAINER SHALL BE RESPONSIBLE FOR AND BE THE ABSOLUTE INSURER OF THE CONDITION OF THE HORSES HE ENTERS REGARDLESS OF THE ACTS OF THIRD PARTIES."

2. "[Idaho Horse Racing Rules and Regulations] 15.19 If the Stewards find that any medication which, for the purposes of definition, shall include any drug, chemical, narcotic, anesthetic, or analgesic has been administered to a horse in such a manner that it is present in a pre race

respondents were not present at the hearing but appeared through counsel. Following the hearing, the commission suspended the licenses of the respondents for violations of Rules 4.36 and 15.19.

The respondents appealed to the district court for a review of the commission's ruling. Following a non-jury trial the district court found that although the commission had presented evidence showing that the respondents were licensed by the commission and that the horses had been illegally medicated the commission had not established that the respondents participated in the administration of the drug. The court concluded that a violation of Rule 15.19 required a finding that the violator participated in the administration of the illegal medication. The court also ruled that to the extent Rule 4.36, the absolute insurer rule, was used as a substitute for that finding, it constituted an irrebuttable presumption in violation of the respondents' constitutional due process rights. The district court therefore reversed the decision of the commission. The commission and the Western Idaho Fair Board brought this appeal.

On appeal to this Court the respondents do not question the accuracy of the chemical test or the commission's conclusion that the two horses had been illegally medicated. Rather, the issue raised is whether the commission could suspend the licenses of these two trainers without showing that they were at fault. The commission argues that it had established a violation of Rule 4.36, the absolute insurer rule, and that the commission was therefore entitled to suspend the licenses of these trainers pursuant to I.C. § 54–2509 and Rules 16.03 and 16.06, regardless of whether a violation of Rule 15.19 had been demonstrated. I.C. § 54–2509 and Rules 16.03 and 16.06 authorize the commission and the stewards to penalize violators of the commission's rules.[3] The commission has not argued on appeal that there was a violation of Rule 15.19, and the reason why it has not made that argument is apparent. Rule 15.19 clearly requires a showing of some involvement by the trainers in the administration of the illegal medication and no such showing has been made in this case. Thus, the single issue before us is whether the commission was entitled to suspend the licenses of these two trainers for a violation of Rule 4.35, the absolute insurer rule.

According to the commission, Rule 4.36 is a strict liability rule reflecting a policy decision by the commission to place responsibility for the condition of a racehorse on its trainer. The commission argues that the rule is violated when a horse is raced while in an improper condition, and that a finding of fault on the part of the trainer is not an element of liability.

There is a division of authority concerning the legality of rules making the trainer strictly liable for the improper condition of a racehorse. The leading case, *Sandstrom*

---

or post race test sample, such presence shall constitute prima facie evidence that the horse has been illegally medicated. The stewards shall impose such penalty and take such other action as they deem proper under any of the rules of racing against every person found by them to have administered, attempted to administer, cause to be administered, caused an attempt to administer, or conspired with another to administer such medication without prior approval of the Commission."

3. "[I.C.] 54–2509. Penalty for violations of law—power of commission.— . . .

. . . . .

"Any person maintaining a license issued by the commission, who violates the provisions of this act or the rules and regulations of the commission, may have such license suspended or revoked. In lieu to such suspension or revo-cation the commission may levy a monetary penalty commensurate with the gravity of the offense. . . ."

"[Idaho Horse Racing Rules and Regulations] 16.03 The stewards shall have general supervision and authority over owners, trainers, jockeys, grooms and other persons attendant on horses, and also over the premises where meeting is conducted."

"[Idaho Horse Racing Rules and Regulations] 16.06 The Stewards have the power to punish at their discretion any person subject to their control either by suspension of the privilege of attending the races during the meeting; or by suspension from acting or riding during the meeting; or thirty (30) days; or by fine not exceeding two hundred ($200.00) dollars; or both."

*v. California Horse Racing Board,* 31 Cal.2d 401, 189 P.2d 17 (1948), *cert. denied,* 335 U.S. 814, 69 S.Ct. 31, 93 L.Ed. 369 (1948), upheld such a rule as a proper exercise of the state's power to regulate horse racing, an area in which the court concluded the public interest demanded strict police measures. *Accord, O'Daniel v. Ohio State Racing Comm'n,* 37 Ohio St.2d 87, 307 N.E.2d 529 (1974); *Jamison v. State Racing Comm'n,* 84 N.M. 679, 507 P.2d 426 (1973); *Sanderson v. New Mexico State Racing Comm'n,* 80 N.M. 200, 453 P.2d 370 (1969); *Morris v. West Virginia Racing Comm'n,* 133 N.Va. 179, 55 S.E.2d 263 (1949). *See also Barchi v. Sarafan,* 436 F.Supp. 775 (S.D.N.Y.1977), *juris. noted sub nom., Barry v. Barchi,* 435 U.S. 921, 98 S.Ct. 1482, 55 L.Ed.2d 514 (1978) (upholding a rebuttable presumption created by New York's insurer rule). However, another line of cases holds that such insurer rules constitute an unconstitutional denial of due process and require a showing of fault on the part of the trainer. ·*Paoli v. Baldwin,* 159 Fla. 165, 31 So.2d 627 (1947); *Brennan v. Illinois Racing Bd.,* 42 Ill.2d 352, 247 N.E.2d 881 (1969); *Mahoney v. Byers,* 187 Md. 81, 48 A.2d 600 (1946). *But see Maryland Racing Comm'n v. McGee,* 212 Md. 69, 128 A.2d 419 (1957) (upholding a finding that a trainer failed to properly guard a horse, but discussing *Sandstrom* approvingly).

However, in this case we do not reach the issues concerning the commission's authority to promulgate a properly drawn rule making the trainer strictly accountable for the condition of the horses he enters or the constitutionality of such a rule. Here, the defect lies in Rule 4.36 itself. Rule 4.36 states: "THE TRAINER SHALL BE RESPONSIBLE FOR AND BE THE ABSOLUTE INSURER OF THE CONDITION OF THE HORSES HE ENTERS REGARDLESS OF THE ACTS OF THIRD PARTIES." The rule provides that the trainer is the insurer of the horse's condition, but does not state (1) what condition the trainer insures; or (2) the consequences to the trainer if the unstated condition is or is not present. In short, Rule 4.36 does not establish any standards or impose any duty which can be violated.

The deficiencies in this rule are obvious when the rule is compared with insurer rules of other states, which have been upheld by their courts.[4] The rules considered

---

4. RC–13–02, the insurer rule upheld by the Ohio court in *O'Daniel* provided:

"The trainer shall be the absolute insurer of, and responsible for, the condition of the horses entered in a race, regardless of the acts of third parties. Should the chemical or other analysis of saliva, urine, or blood specimens prove positive, showing the presence of any narcotic, stimulant, depressant, chemical or drug of any kind or description, the trainer of the horse, may, in the discretion of the commission, be subjected to any or all of the following penalties: suspension, revocation of license, being ruled off. . . ." 307 N.E.2d at 530, n. 2.

Rule 313, upheld by the California court in *Sandstrom* provided:

"The Trainer shall be the absolute insurer of and responsible for the condition of the horses entered in a race, regardless of the acts of third parties. Should the chemical, or other analysis of saliva, or urine samples, or other tests, prove positive, showing the presence of any narcotic, stimulant, chemical, or drug of any kind or description, the Trainer of the horse may be suspended or ruled off, and in addition, the Foreman in charge of the horse, the Groom signing the Pre-Race Examination Slip and Paddock Certificate, and any other person shown to have had the care, or attendance, of the horse may be suspended or ruled off, in the discretion of the Board." 189 P.2d at 19–20.

Rules 15.04 and 15.06, upheld by the New Mexico court in *Jamison* provided:

"15.04  A clear test is required of all horses tested in accordance with these Rules.

"(a) Should the chemical, or other analysis, made by the Official State Chemist, or any chemist approved by the Commission, of a urine, saliva or blood sample, or other tests, taken from a horse entered in a race, prove positive, showing presence of any narcotic, stimulant, depressant, local anesthetic, analgesic, pyrasolodine or any derivative or compound thereof, any other drug, chemical or medicine; the Official State Chemist shall so report in the manner prescribed by the Commission.

. . . . .

"(d) The Trainer and horses owned or trained by him shall be suspended by the Stewards whose jurisdiction shall not terminate until official laboratory test reports of all races of the Meeting have been received, and the matter shall be referred to the Commission.

by the courts in *O'Daniel* and *Sandstrom* were substantially the same. Both rules stated that the trainer was the insurer of the condition of the horse and provided that if chemical tests detected the presence of specified drugs the trainer could be penalized. Rule 15.06 of the horse racing rules considered by the New Mexico court in *Jamison* only stated that the trainer was responsible for the horse's condition. However, Rule 15.04 of the New Mexico rules provided that the trainer could be penalized if chemical tests indicated the presence of specified drugs. These rules, in addition to stating that the trainer was the insurer of the horse's condition, stated the condition for which the trainer was to be held strictly accountable—the absence of specified drugs in the horse—and stated the penalties which could be imposed on the trainer if the tests revealed the presence of those drugs. The Idaho rule before us in this case does neither.

Violation of a rule means the transgression of or noncompliance with some duty, obligation or standard. *See Porter v. Sandberg,* 69 F.Supp. 29 (W.D.Ark.1946); *Rabon v. South Carolina State Highway Dept.,* 258 S.C. 154, 187 S.E.2d 652 (1972); *Bryson v. Connecticut Gen. Life Ins. Co.,* 196 S.W.2d 532 (Tex.Civ.App.1946). Inasmuch as Rule 4.36 fixes no standards, it cannot be violated and therefore it alone cannot serve as a basis for suspending the licenses of these trainers pursuant to I.C. § 54–2509 or Rules 16.03 and 16.06.

Affirmed. Costs to respondents.

McFADDEN, DONALDSON and BISTLINE, JJ., concur.

SHEPARD, C. J., dissents without opinion.

(g) The Owner, Trainer, foreman in charge of the horse, the groom, and any other person shown to have had care, or attendance, of the horse, may at the discretion of the Commission have any or all of the following penalties inflicted; be suspended, fined or ruled off.

"15.06 The Trainer shall be responsible for the condition of the horse he enters." 507 P.2d at 427–428.