482 So.2d 200 (1986)
Bobby Edward ARRINGTON
v.
LOUISIANA STATE RACING COMMISSION.
No. CA-2658.
Court of Appeal of Louisiana, Fourth Circuit.
January 15, 1986.
William J. Guste, Jr., Atty. Gen., Robert A. Barnett, John E. Jackson, Jr., Asst. Attys. *201 Gen., New Orleans, for defendant-appellee, Louisiana State Racing Com'n.
Salvador Anzelmo, Thomas W. Milliner, New Orleans, for plaintiff-appellant, Bobby Edward Arrington.
Before SCHOTT, BARRY, BYRNES, LOBRANO and WARD, JJ.
WARD, Judge.
On March 3, 1983 a race horse belonging to Bobby Arrington, a Louisiana licensed owner and trainer of quarter-horses, finished second and shared part of the purse in the fifth race at Evangeline Downs. A post-race analysis of the horse's urine sample indicated the presence of methamphetamine, a central nervous system stimulant prohibited by the Louisiana Rules of Racing, L.A.C. 11-6:53.14. At Arrington's request, a split sample of the urine was later analyzed and proved positive for methamphetamine. Before the results of the split sample test were known, the Board of Stewards of Evangeline Downs issued a rule suspending Arrington's racing privileges. Arrington appealed the Stewards' rule to the Louisiana State Racing Commission which suspended Arrington's owner and trainer license for eighteen months and imposed a five-hundred dollar fine. The ruling of the Commission was affirmed by Orleans Parish Civil District Court, but upon Arrington's Motion for a New Trial, it remanded the case to the Commission for the purpose of hearing evidence on the results of the split sample test. After the rehearing, the Commission affirmed its original ruling but reduced Arrington's suspension from eighteen to twelve months. The Commission relied upon the absolute insurer rule of the Rules of Racing and the Louisiana Statutes. L.A.C. 11-6:53.18 and La.R.S. 4:150(A). That rule makes the trainer responsible for the condition of his horse, whether or not the act of doping a horse was the act of another and whether or not the trainer was negligent. This ruling was affirmed by the District Court.
Arrington now appeals, raising three issues which all amount to the same argument: the absolute insurer rule violates the Due Process Clauses of the Louisiana and United States Constitutions by creating an irrebuttable presumption.
This same argument was rejected in Owens v. Louisiana State Racing Commission, 466 So.2d 764 (La.App. 4th Cir. 1985). The holding of Owens, which involved strikingly similar facts, controls the disposition of this appeal. The absolute insurer rule which makes the trainer responsible for the condition of his horses does not violate Due Process because the rule is reasonably related to the government interests sought to be advanced by the ruleto insure fair, safe races, to protect the wagering public and to preserve the public's confidence in the integrity of the racing industry. See La.R.S. 4:141; Louisiana Rules of Racing, Preface and Forward (1983).
We agree with Owens; the strong public interest justifies close regulation of horse racing, an industry especially susceptible to fraud and corruption. Furthermore, strict regulation of the trainer by making him an absolute insurer is reasonable because the trainer is the person best able to guarantee the condition of the horses. See Berry v. Michigan Racing Commission, 116 Mich. App. 164, 321 N.W.2d 880 (1982), appeal dismissed, ___ U.S. ___, 105 S.Ct. 64, 83 L.Ed.2d 15 (1984). "The insurer rule provides maximum protection against illegal drugging; arguably it is the only practical means of reducing such corrupt practices.... The insurer rule is a reasonable alternative to either leaving [the public and State] interests unprotected or forbidding legalized racing." (citations omitted) Id., 321 N.W.2d at 884.
Furthermore, hearings and rulings of the Racing Commission are not to be equated with criminal trials. The Commission is governed by the Administrative Procedure Act and functions as a civil administrative body, not as a Trial Court in a criminal case. La.R.S. 4:154; Pullin v. Louisiana State Racing Commission, 477 So.2d 683 (La.1985). One appearing before the Commission is not entitled to every *202 constitutional right afforded defendants in criminal trials. Hence, it is not necessary to show either knowledge or intent, or even negligence of the trainer.
Moreover, a trainer voluntarily applies for a license, and upon approval by the Commission, he subjects himself to certain terms and conditions such as the absolute insurer rule which might be inappropriate in other situations. Id. at 686-87. The relationship between the Commission and trainers, owners, jockeys and others is analogous to a contractual commitment with each party agreeing not to race a horse that has been stimulated by drugs, no matter who administers the drugs. La. R.S. 4:150(A) and (B). If a horse races when stimulated by drugs, the responsible party has breached his commitment, both to others in the sport and to the public that horse racing will be fair, safe and deserving of public confidence.
AFFIRMED.
BARRY, J., dissents with reasons.
BYRNES, J., joins with Justice BARRY's dissent.
BARRY, Justice, dissenting.
The "absolute insurer rule" of La.R.S. 4:150(A) and LAC 11-6:53.18 violates the due process clause of both the state and federal constitutions in two respects: they create an irrebuttable presumption of guilt and fail to provide standards or impose a duty which can be breached.
LAC 11-6:53.18 provides:
The trainer and/or assistant trainer shall be responsible for and be the absolute insurer of the condition of the horses he enters regardless of acts of third parties. Trainers and/or assistant trainers are presumed to know the rules of the Commission.
La.R.S. 4:150(A) provides:
The granting of a license to a trainer shall make him responsible for and be the absolute insurer of the condition of the horses he enters regardless of the acts of third parties.
In striking down a similar statute, the Illinois Supreme Court reasoned:
In the case at bar there is not even an evidentiary presumption. The licensee is penalized without showing any act or neglect on his part whatsoever. There is no proof that he even knew of the doping of his horse, much less that he actively participated in it. He loses his license solely because of someone else's conduct, of which he had no personal knowledge. It is a fundamental principle of Anglo-Saxon justice that responsibility is personal and that penalties may not be inflicted on one person because of another's acts. Brennan v. Illinois Racing Board, 42 Ill.2d 352, 247 N.E.2d 881, 883 (1969).
The absolute insurer rule creates an irrebuttable presumption of guilt which deprives the trainer of his right to offer evidence to prove his innocence. It is no defense that a trainer exercised due care or that "doping" occurred under circumstances over which he had no control. A statute that does not permit such legitimate defenses fundamentally violates due process.
Unlike Briley v. Louisiana State Racing Commission, 410 So.2d 802 (La.App. 3rd Cir.1982), writ denied 414 So.2d 375 (La. 1982) and Owens v. Louisiana State Racing Commission, 466 So.2d 764 (La.App. 4th Cir.1985), writ denied 468 So.2d 576 (La.1985), I am not convinced that the absolute insurer rule has a rational basis and is reasonably related to the governmental interest sought to be advanced.
The reason behind the statute and rule is to protect the public from fraud and deceit by inducing the trainer to take the utmost precautions against tampering with a horse. Yet this is no more than he would do under penalty provisions based on traditional principles of fault, since the consequences of failing to take precautions would be the same. The only applications of the statute which would not be equally covered by one based on fault would be situations which the trainer could not have prevented anyway. As a practical matter, numerous violations have been before this *203 court and I find no proof that a penalty-without-fault statute reduces the number of alleged offenses.
Making the trainer an absolute insurer at peril of losing his license regardless of his innocence is arbitrary and unreasonable. Brennan v. Illinois Racing Board, supra. I'm certainly aware that the "nature" of horse racing dictates close scrutiny and supervision, but that necessity must stop short of violating basic constitutional rights.
La.R.S. 4:150(A) and LAC 11-6:53.18 also fail to meet due process requirements because they do not provide any standard or impose any duty which can be breached.
Neither provision states what condition the trainer insures, or the consequences to the trainer if the unstated condition is or is not present.
A similar rule was struck down by the Idaho Supreme Court in Schvaneveldt v. Idaho State Horse Racing Commission, 99 Idaho 131, 578 P.2d 673 (1978). In that case the court noted:
Here, the defect lies in Rule 4.36 itself. Rule 4.36 states: `THE TRAINER SHALL BE RESPONSIBLE FOR AND BE THE ABSOLUTE INSURER OF THE CONDITION OF THE HORSES HE ENTERS REGARDLESS OF THE ACTS OF THIRD PARTIES.' The rule provides that the trainer is the insurer of the horse's condition, but does not state (1) what condition the trainer insures; or (2) the consequences to the trainer if the unstated condition is or is not present. In short, Rule 4.36 does not establish any standards or impose any duty which can be violated.
* * * * * *
Violation of a rule means the transgression of or noncompliance with some duty, obligation or standard. See Porter v. Sandberg, 69 F.Supp. 29 (W.D.Ark.1946); Rabon v. South Carolina State Highway Dept., 258 S.C. 154, 187 S.E.2d 652 (1972); Bryson v. Connecticut Gen. Life Ins. Co., 196 S.W.2d 532 (Tex.Civ.App. 1946). Inasmuch as Rule 4.36 fixes no standards, it cannot be violated and therefore it alone cannot serve as a basis for suspending the licenses of these trainers pursuant to I.C. § 54-2509 or Rules 16.03 and 16.06. Schvaneveldt v. Idaho State Horse Racing Commission, supra, 578 P.2d at 675-678.
Louisiana horse racing has another safeguard which is constitutional and adequate to police the "sport".
LAC 11-6:53.15 provides:
When a report is received from the State chemist reflecting in his expert opinion that the chemical analysis of blood, saliva, urine, or other samples taken from a horse indicate the presence of a forbidden narcotic, stimulant, depressant, or analgesic, local anesthetic or drugs of any description, not permitted by LAC 11-6:54, this shall be taken as prima facie evidence that such has been administered to the horse. Such shall also be taken as prima facie evidence that the owner, and/or trainer, and/or groom has been negligent in handling of the horse.
The above rule creates a presumption of guilt, but a prima facie showing of negligence can be rebutted.
The absolute insuror rule is not only unconstitutionally repugnant, it is unnecessary.
BYRNES, J., joins.