FRANCIS J. VITALE *vs.* STATE RACING COMMISSION. April 9, 1982. Vitale has appealed from a judgment of the Superior Court sustaining a decision of the State Racing Commission (the Commission). By that decision, Vitale's license as a trainer of race horses was suspended for nine months.

Kumulus 2nd, trained by Vitale, won a race at Suffolk Downs on December 3, 1978. Routine testing by the commission's laboratory of a promptly obtained urine sample indicated no drug content. At that time, however, all samples were being tested for the drug fentanyl. For that purpose, the commission used the facilities of the Illinois State Racing Commission's laboratory which had sophisticated testing equipment not available to the Massachusetts commission. As a consequence of testing in Illinois, samples of an extract of Kumulus 2nd's urine also were tested in the Boston Medical Laboratory in Waltham beginning on June 21, 1979. That laboratory then was having difficulties with its "very sensitive, complex [testing] instrument" and analysis was not completed until October 25, 1979. An expert witness from that laboratory testified that the samples tested did contain fentanyl, a "synthetic, prepared narcotic" used as an anesthetic or painkiller "fairly close to heroin or morphine although more potent than both."

Upon receipt by the commission of the urine test showing fentanyl, the stewards of Suffolk Downs on November 1, 1979, caused Vitale to be notified. After hearings on November 2 and 7, 1979, with Vitale's counsel present, the stewards suspended Vitale as a trainer for an indefinite period. Vitale appealed to the commission and was heard by it (with counsel present) on November 28 and December 5, 1979. On December 12, 1979, the commission made findings and suspended Vitale for nine months. Vitale filed this complaint for judicial review (see G. L. c. 30A, § 14) on December 20, 1979. A Superior Court judge, ordered judgment affirming the commission's action.

1. Vitale contends that the member (Commissioner McCusker) who presided at the commission hearings improperly combined the function of prosecutor with that of a commission member participating in an adjudicatory hearing. The transcript of the two hearings before the commission shows no more than that the presiding commissioner examined the witnesses to bring out all the evidence concerning the tests conducted. There is no indication that Commissioner McCusker participated in the original investigations of Vitale. The record suggests no significant risk of bias. *Withrow* v. *Larkin*, 421 U.S. 35, 46-58 (1975). See *Dwyer* v. *Commissioner of Ins.*, 375 Mass. 227, 235 (1978); *School Comm. of Stoughton* v. *Labor Relations Comm.*, 4 Mass. App. Ct. 262, 272-273 (1976). See also *Hortonville Joint Sch. Dist. No. 1* v. *Hortonville Educ. Assn.*, 426 U.S. 482, 491-493 (1976); 3 Davis, Administrative Law § 18.2 (2d ed. 1980).

2. The commission, see *Colella* v. *State Racing Comm.*, 360 Mass. 152, 158-159 (1971), has adopted rules under G. L. c. 128A, §§ 9, 9A, and 9B, to regulate horse racing including the enforcement of c. 128A, § 13B, making it a criminal offense to administer any drug to a horse "for the purpose of retarding, stimulating or in any other manner *affecting* . . . [its] speed" (emphasis supplied) in connection with a race conducted under c. 128A. Rule 607, found in 205 Code Mass. Regs. (CMR) 4.45(8) (1978), provides that the trainer "shall be responsible for and be the absolute insurer of the condition of the horses he enters regardless of the acts of third parties." The rule has been upheld as constitutionally valid. *Fioravanti* v. *State Racing Comm.*, 6 Mass. App. Ct. 299, 304-305 (1978). Rule 519 (205 CMR 4.41[8] [1978]) permits the stewards of a racetrack to impose penalties if they "find that any medication" including "any drug, narcotic, anesthetic or analgesic, has been administered to a horse before a race which is *of such character as could affect* the speed of the horse . . ." (emphasis supplied). The conclusions of the board that these regulations had been violated were justified by (a) the testimony (already mentioned) before the commission concerning the presence in Kumulus 2nd's urine sample of fentanyl and concerning its relationship to heroin and morphine, and (b) further testimony that the sophisticated analysis procedures "had to be used because of the low quantity [of fentanyl] expected to be found in urine." Certainly a board charged with supervising horse racing could conclude on the substantial evidence in the record, interpreted in the light of their own general expertise and knowledge, that a "painkiller" drug more potent than heroin and morphine was "of such character as could affect the speed" of a horse, by killing pain if not by other methods. Compare *Arthurs* v. *Board of Registration in Medicine*, 383 Mass. 299, 309-310 & n.23 (1981), where there was no substantial evidence to support certain findings. The routine "screening [of] all samples for . . . fentanyl" was in itself some indication that expert commissioners regarded fentanyl as a proscribed drug. See also a group of cases in this court in-

volving fentanyl. *Martinez* v. *State Racing Commn.*, 10 Mass. App. Ct. 909 (1980). The transcript of the hearing before the commission does not show any contention then made for Vitale that fentanyl was not a proscribed drug under rule 519 or (if it, indeed, be at all relevant under the rule) that the amount of drug indicated by the test was insufficient to "affect" a horse's speed.

3. About eleven months elapsed between (a) the Suffolk Downs race on December 3, 1978, and (b) the initial notification of Vitale on November 1 and 2, 1979, that the urine tests indicated the use of fentanyl on Kumulus 2nd. Some of the delay appears to have been caused by the commission's inadequate testing facilities and by difficulties with the intricate testing apparatus in the Boston Medical Laboratory. The argument is made that the delay deprived Vitale of opportunity to recall the circumstances at Suffolk Downs in early December, 1978, and thus perhaps to discover the persons responsible for the administration of the drug to Kumulus 2nd. Rule 607, however, makes the trainer "the absolute insurer" of the condition of a horse entered by him in a race and even proof that the trainer was not in fact responsible for the drug (but at most negligent in protecting his horse) would have limited or no relevance. For the validity of "absolute insurer" rules, see *Sandstrom* v. *California Horse Racing Bd.*, 31 Cal. 2d 401, 406-415, cert. denied, 335 U.S. 814 (1948); *Jamison* v. *State Racing Commn.*, 84 N.M. 679, 681 (1973); *O'Daniel* v. *Racing Commn.*, 37 Ohio St. 2d 87, 90-92 (1974); *State ex rel. Spiker* v. *Racing Commn.*, 135 W. Va. 512, 525 (1951). See also *Division of Pari-Mutuel Wagering* v. *Caple*, 362 So. 2d 1350, 1354 et seq. (Fla. 1978), overruling *State ex rel. Paoli* v. *Baldwin*, 159 Fla. 165, 169, 172-174 (1947). Compare *Schvaneveldt* v. *State Horse Racing Commn.*, 99 Idaho 131, 132 et seq. (1978, insurer rule, by itself without standards, even if not lacking in due process, is inadequate); *Brennan* v. *Illinois Racing Bd.*, 42 Ill. 2d 352, 354-358, but with Schaefer, J., dissenting (1969); *Mahoney* v. *Byers*, 187 Md. 81, 88-89 (1946); but see *Maryland Racing Commn.* v. *McGee*, 212 Md. 69, 75-76, 80 (1957). Nothing in *Barry* v. *Barchi*, 443 U.S. 55, 65-66 (1979), dealing with a somewhat different type of regulation, casts doubt upon the validity of the Massachusetts regulation or on the procedural system for its enforcement. Here prompt hearings were afforded to Vitale after license suspension action was proposed. See generally *Edelberg* v. *Illinois Racing Bd.*, 540 F.2d 279, 282 et seq. (7th Cir. 1976).

4. We have been referred to no statute or regulation requiring that the commission's adjudicatory procedures be completed within any specified time. Certainly the power of a reviewing court under G. L. c. 30A, § 14(7), to "compel any action . . . unreasonably delayed" is not such a statute of limitations. See Goldman, Administrative Delay and Judicial Relief, 66 Mich. L. Rev. 1423, 1439-1442, 1446 et seq. (1968). Cf. *Cohen* v. *Board of Registration in Pharmacy*, 350 Mass. 246, 253 (1966). Courts

only rarely are justified in interfering with the procedures and activities of administrative agencies on the basis of delay alone. See *FTC* v. *J. Weingarten, Inc.*, 336 F.2d 687, 691-692 (5th Cir. 1964), cert. denied, 380 U.S. 908 (1965). *Wright* v. *Califano*, 587 F.2d 345, 352-353 (7th Cir. 1978).

*Judgment affirmed.*

*David Berman (Usher A. Moren* with him) for the plaintiff.

*Steven Goldberg (Scott A. Smith,* Assistant Attorney General, with him) for the defendant.