ANDERSON INSULATION CO., INC., & another[1] *vs.* DEPARTMENT OF PUBLIC HEALTH.

No. 98-P-341.

Plymouth. May 5, 1999. - October 13, 1999.

Present: KASS, PORADA, & LENK, JJ.

*Public Health,* Hazardous substance. *Hazardous Materials. Regulation. Res Judicata. Administrative Law,* Regulations. *Limitations, Statute of.*

Plaintiffs, installers of urea formaldehyde foam insulation (UFFI), who did not contribute to the UFFI trust fund established through St. 1985, c. 728, § 4, and who were parties to *Borden, Inc.* v. *Commissioner of Pub. Health,* 388 Mass. 707, cert. denied, 464 U.S. 936 (1983), were foreclosed by the *Borden* holding from relitigating the rationale and applicability of the regulations adopted by the Department of Public Health, 105 Code Mass. Regs. § 650.222, requiring installers not exempt under the trust fund to pay for removal of UFFI and to reimburse customers for its purchase price. [82-84]
There was no merit to claims of installers of urea formaldehyde foam insulation that the Department of Public Health had failed to give timely notice of or delayed unreasonably in issuing repurchase certificates under 105 Code Mass. Regs. § 650.222, and, in any event, the installers demonstrated no prejudice from any delay. [84-86]

CIVIL ACTIONS commenced in the Superior Court Department on July 24, 1990, December 16, 1993, April 15, 1994, May 24, 1994, and July 21, 1994, respectively.

A motion for summary judgment was heard by *John J. O'Brien,* J., and, upon consolidation of the cases, motions for summary judgment were heard by *Elizabeth B. Donovan,* J., and *Patrick F. Brady,* J., and entry of separate and final judgment was ordered by *John A. Tierney,* J.

*Robert H. Greene* for the plaintiffs.

*Peter T. Wechsler,* Assistant Attorney General, for the defendant.

[1]Martin Roos, doing business as Action Foam Engineering.

KASS, J. Fundamentally, this is a reprise of a controversy about urea formaldehyde foam insulation (UFFI) that was the subject of *Borden, Inc.* v. *Commissioner of Pub. Health*, 388 Mass. 707, cert. denied, 464 U.S. 936 (1983).[2] In this appeal, which is from five consolidated civil actions disposed of by three summary judgment orders in Superior Court, the plaintiffs, who are installers[3] of UFFI, contend: *first*, that by reason of passage of time since the 1983 opinion, the UFFI installed in these cases ought no longer to be classified as a hazardous substance[4]; and, *second*, that thirty-two repurchase certificates were unlawfully granted by the Department of Public Health (DPH).[5]

1. *Developments in the wake of the* Borden *case*. After the *Borden* decision, and in accordance with it, DPH adopted regulations under which it would adjudicate individual claims for a certificate of right to repurchase. See 105 Code Mass. Regs. § 650.222 (1984, 1986, 1987, and 1988). Such a certificate requires the installer to pay for removal of the insulating material as well as to reimburse the customer for the purchase price of the installation. *Ibid*. The repurchase regulations entitle owners of buildings with UFFI to request repurchase any time before July 1, 1991, or within eighteen months after the date the owner acquired the building, whichever is later. 105 Code Mass. Regs. § 650.222(2)(d) (1989) (effective June 30, 1988). To do so, a claimant is to forward to DPH, among other information, the date of installation of UFFI and, if known, the name of the installer, distributor, and manufacturer of the UFFI. If a responsible member of the UFFI industry is identified, DPH is to provide, within a reasonable time, an adjudicatory hearing, limited to the factual issue of whether the particular UFFI had been installed by the industry member charged. 105 Code Mass. Regs. § 650. 222(3)(a)(2) and (3) (1984, 1986 and 1987). As the hearing is limited to that question, the regulations provide that

---

[2]The nature of UFFI and those characteristics that caused it to be classified a hazardous substance under G. L. c. 94B are compendiously set out in the *Borden* opinion.

[3]An "installer" of UFFI, as defined in 105 Code Mass. Regs. § 650.222(1) (1984), means any person who made a retail sale of UFFI.

[4]This contention, appearing as a second count in the five complaints, was raised in the form of a request for declaratory relief under G. L. c. 231A.

[5]This contention, count one in the complaints, was raised in the form of review under G. L. c. 30A, § 14, of administrative agency action.

evidence about "the formaldehyde content of any air sample" and any consequential health effects is inadmissible. 105 Code Mass. Regs. § 650.222(6)(i)(1) and (3) (1984, 1986 and 1987). The thirty-two repurchase certificates resulted from such adjudicatory proceedings.

Subsequent to the initial promulgation of the regulations, the Legislature, through St. 1985, c. 728, § 4, established the "UFFI Trust Fund," financed by voluntary contributions from UFFI industry companies. The fund pays for the removal of UFFI from homes when the formaldehyde concentration in the ambient air exceeds 0.10 parts per million. St. 1985, c. 728, §§ 2 & 3. The trade-off for the voluntary contributions to the trust fund is that contributors are relieved from their obligations to pay for removal and reimbursement under the repurchase regulations. St. 1985, c. 728, § 4. Neither of the plaintiffs made a contribution to the trust fund, and they are, therefore, subject to the previous repurchase regulations.

2. *Continuing validity of the UFFI ban and repurchase regulations.* In consequence of concern about respiratory irritations, eye and skin irritations, and adverse neurophysical effects from the off-gassing of UFFI, DPH in 1979 declared UFFI to be a hazardous substance, banned its sale in Massachusetts, and required its repurchase, as described above. See *Borden* v. *Commissioner of Pub. Health*, 388 Mass. at 712. Whatever the scientific merits of those measures in 1979, the plaintiffs argue that by 1990, when the first of the complaints involved in this appeal was filed, the harmful gaseous products of UFFI that had been installed prior to the ban had so dissipated that there was no longer a factual basis for the repurchase regulations. For support of that position they rely particularly on the trust fund act, which says removal of UFFI ought not to be required if formaldehyde concentrations are 0.10 parts per million or less. The UFFI repurchase regulations do not contain a parts per million floor below which the regulations do not apply.

Both the ban and the regulations were approved (subject, as discussed, to the requirement of introducing adjudicatory proceedings as to each repurchase claim) in the *Borden* decision. DPH, therefore, takes the position that the plaintiffs, who were parties to the *Borden* case, are foreclosed by settled principles of former adjudication from litigating anew the rationality of the repurchase regulations. The essential ingredients for application of former adjudication (or, in older

vocabulary, res judicata) are present in that there were (1) a final judgment on the merits; (2) identity of parties; and (3) commonality of subject matter. *Gloucester Marine Ry.* v. *Charles Parisi, Inc.*, 36 Mass. App. Ct. 386, 390 (1994). The plaintiffs seek to jump over the res judicata barrier on the theory that material operative facts occurred after the *Borden* decision came down so as to alter the context for decision. See *Lopes* v. *Board of Appeals of Fairhaven*, 27 Mass. App. Ct. 754, 755 (1989); Restatement (Second) of Judgments § 24 comment f (1982).

Whether there was a causal connection between low level off-gassing from UFFI and physical complaints from consumers had, however, been very much on the agenda of the *Borden* case. Causation, the court decided, was a nonfactor because under the governing statute, G. L. c. 94B, once the DPH categorizes a material a hazardous substance, the manufacturer, distributor, or retailer of the material so categorized is bound to repurchase without any demonstration that the material caused the claimant physical ill. G. L. c. 94B, § 8. It was enough, under DPH's then applicable regulations, to show that the claim-ant had symptoms associated with exposure to UFFI, was an owner of a building with UFFI in it, and that the person claimed against had installed that UFFI. *Borden, Inc.* v. *Commissioner of Pub. Health*, 388 Mass. at 730. 105 Code Mass. Regs. § 650.222(E)(9)(a) and (b) (1980).[6] The inability of the install-ers to contest whether a low level of formaldehyde concentra-tion (in terms of parts per million) did any harm, the court observed, was an objection "more properly directed toward the statute from which the commissioner draws his power to issue the regulations." *Borden, supra.*

As to the provision of the trust fund act that requires formaldehyde to be present in concentrations exceeding 0.10 parts per million to qualify for a claim against the trust fund, St. 1985, c. 728, §§ 1 & 3, this was, indeed, a new criterion introduced in favor of installers who contributed to the fund and thereby expedited compensation to UFFI consumers. It is not necessary, for example, under the trust fund procedure to establish who installed the UFFI. That does not constitute a declaration that concentrations of 0.10 or less are harmless. Indeed, a concentration greater than 0.10 is an alternative

---

[6]In later editions of § 650.222 (1984, 1987, and 1994), the requirement of showing physical effects associated with UFFI was dropped.

criterion for repurchase eligibility. If the consumer has suffered ill effects from UFFI in the building, then, under the trust fund act, it is not necessary to establish a concentration exceeding 0.10. It is not correct to say, therefore, that the trust fund act made concentrations of 0.10 parts per million or less a safe harbor for UFFI installers. In addition, § 5 of the trust fund act declares that private rights, i.e., claims not made against the fund, shall not be impaired and that any person who recovers from the trust fund shall assign to DPH claims against noncontributory UFFI installers. The trust fund act kept the repurchase system under G. L. c. 94B and 105 Code Mass. Regs. § 650.222 very much alive. An article appearing in a journal called Public Health Reports, to which the plaintiffs call our attention, does not really add to the discussion. That article describes the trust fund legislation, the effect of which we have analyzed, as emblematic of midcourse correction in the development of health policy. Walker, Fox, Li, & Parker, The Massachusetts Program for Reducing the Risk of Formaldehyde Exposure, 102 Pub. Health R. 290 (1987).

3. *The administrative proceedings leading to issuance of the repurchase certificates.* The first attack on the administrative proceedings alleges their arbitrariness because the regulations required no showing of dangerous formaldehyde concentration or health problems associated with UFFI off-gassing. In a different procedural form, i.e., review under G. L. c. 30A, § 14, this is the same argument discussed in the preceding section of this opinion. The answer, as before, is that G. L. c. 94B does not require a dangerous level of formaldehyde; if a material has been declared a hazardous substance, the consumer may demand its removal as well as reimbursement of the cost of buying the material and paying for its installation.

The second point of attack is that DPH delayed unreasonably in issuing the repurchase certificates. In 1990, when the complaints were filed, there was a deadline of July 1, 1991, for requesting repurchase certificate claims, and all thirty-two claims here involved were made before that due date. 105 Code Mass. Regs. § 650.222(2)(d) (1989) (effective June 30, 1988). The plaintiffs complain, however, that DPH failed to notify

them of twenty-two[7] claims made before July 1, 1987, within a reasonable time after July 1, 1987. See 105 Code Mass. Regs. § 650.222(3)(a)(2) (1987). In fact, the record contains a letter from DPH to the president of the plaintiff Anderson Insulation Co., Inc. (identified with those claims), notifying him on May 28, 1987 (let alone within a reasonable time after July 1, 1987), of pending repurchase claims. Much of the delay in adjudicatory hearings was the result of the effort of DPH to establish and launch the trust fund claim alternative. We think this was not an unreasonable cause for delay as it served in the larger picture to expedite claims for those installers who participated in the trust. Again, the plaintiffs have shown no prejudice as a consequence of the delay in the ultimate adjudicatory proceedings. See *Amherst-Pelham Regional Sch. Comm.* v. *Department of Educ.*, 376 Mass. 480, 497 (1978); *Massachusetts Auto Body Assn., Inc.* v. *Commissioner of Ins.*, 409 Mass. 770, 780 (1991); *Tambrands, Inc.* v. *Commissioner of Rev.*, 46 Mass. App. Ct. 522, 525-527 (1999). When a statute or regulation "relates only to the time of performance of a duty by a public officer and does not go to the essence of the thing to be done, it is only a regulation for the orderly and convenient conduct of public business and not a condition precedent to the validity of the act done." *Cheney* v. *Coughlin*, 201 Mass. 204, 211 (1909). *Children's Hosp. Corp.* v. *Rate Setting Commn.*, 410 Mass. 66, 74 (1991). See *Vitale* v. *State Racing Commn.*, 13 Mass. App. Ct. 1025, 1027-1028 (1982). Contrast *Middleborough* v. *Middleborough Gas & Elec. Dept.*, 47 Mass. App. Ct. 655, 656-659 (1999).

The plaintiffs have also argued that the claims are in violation of the limitations periods set forth in G. L. c. 260, § 2B (tort actions arising from improvements to real property), § 5A (consumer protection actions), and § 18 (subjecting the Commonwealth to various statutes of limitations). The repurchase claims, however, arise not under the common law or statutes creating rights to be vindicated in a court of law, but under an administrative scheme promulgated by the Commissioner of Public Health pursuant to a broad delegation of power in G. L. c. 94B, § 8. The statutes of limitations that the plaintiffs would have us apply in this case specifically apply to tort and consumer

[7]The Department of Public Health's brief sets the number at eighteen but we arrive at a count of twenty-two on the basis of a table appended to the plaintiffs' brief.

protection actions brought in a court. Here, the claimants filed repurchase requests under 105 Code Mass. Regs. § 650.222(2)(a), triggering an administrative adjudicatory proceeding. It is enough to say that the directive in G. L. c. 94B, § 8, requiring the repurchase of a banned hazardous substance and delegating broad authority to the Commissioner of Public Health to promulgate regulations governing the repurchases, includes the authority to prescribe limitations periods specific to the repurchase of a particular hazardous substance. See *Weaver* v. *Commonwealth*, 387 Mass. 43, 50 (1982) (deciding that the tolling provisions of G. L. c. 260 apply only to actions that have a common-law origin); *Maltz* v. *Smith Barney, Inc.*, 427 Mass. 560, 563 (1998) (declining to apply statutes of limitations set out in G. L. c. 260 to arbitration proceedings).

4. *Conclusion.* The judgments of the Superior Court, affirming the repurchase decisions of DPH and the judgment declaring that the right to repurchase certificates are valid and binding on the plaintiffs-installers, are affirmed.

*So ordered.*